LOUISE ADDISON *vs.* GREEN CAFE, INC.

Suffolk.     October 6, 1948. — February 3, 1949.

Present: QUA, C.J., LUMMUS, DOLAN, WILKINS, & WILLIAMS, JJ.

*Proximate Cause.*

Negligence of an employee of the proprietor of a café in failing properly to deal with an altercation on the premises could not properly be found to have been the proximate cause of personal injuries sustained by a customer of the café by being struck by one of several shots fired from a revolver by another customer, where the evidence did not show that the customer firing the shots was in any way associated with the altercation; even if he opened fire to stop the altercation, it was an extraordinary rather than a normal method of doing so and superseded the negligence of the employee as a cause.

TORT. Writ in the Superior Court dated October 23, 1946.

The case was tried before *Dillon,* J.

*R. J. Coffin,* (*D. Stahl & J. P. St. Pierre* with him,) for the plaintiff.

*J. G. Schumb,* (*T. C. McElroy* with him,) for the defendant.

QUA, C.J. This action, by reason of the waiver of counts, has now become an action against Green Cafe, Inc., alone. The sole claim is that during the evening of April 12, 1946, the plaintiff suffered personal injury through the negligence of the defendant as the result of being shot and wounded while she was a patron at the café or restaurant in Boston where the defendant carried on the business of serving food and drink to the public.

There was evidence that the café was of considerable size, containing fifty booths and twenty stools; that about one hundred fifty customers, both soldiers and civilians, were on the premises at the time of the shooting; that the defendant employed, among others, two men, one of whom was named West; that if there was any disturbance one of these men would call a police officer stationed outside the door, while

the other man would "stall off an argument, or whatever may arise"; that it was the duty of these men "to go about and tell people to sit down, keep order and everything else"; and that the defendant paid for the policeman.

The account of the occurrence supported by the evidence for the defendant and that given by its manager, called by the plaintiff, was that two soldiers engaged in an argument about who should pay for the drinks, but were not fighting; that West was trying to stop them and the officer had been sent for; that after from one to two or three minutes a soldier named Pickens, who had been sitting in a booth ten or fifteen feet away, and who had taken no part in the argument, without saying a word, began shooting, pointing his revolver at the floor in front of him; that in some manner the plaintiff and another person were hit; and that Pickens fired in all four or five shots as he backed out through the door.

The account given by the plaintiff differed from the foregoing in some details. She testified that West and a soldier were arguing and after a while started fighting; that West struck the soldier "and then the commotion started"; that she ran and got on top of a "juke machine"; that everybody started to run; that the soldier with whom West was arguing was not Pickens; and that "prior to the fight which finally concluded by shooting, there had been some arguments; there was nothing to it, just some fellows arguing, and they would not walk away. There weren't any blows struck or anything like that." She further testified that West shot her. West denied this and denied having any revolver. A witness called by the plaintiff testified that "a sailor" and West had an argument and were pushing each other and "messed one another around a little bit," and were "sort of roughing one another up"; that all of a sudden a soldier jumped in, started a "sort of a battle," and backed toward the door firing straight ahead with the gun leveled; and that after the shooting he saw a gun in West's hands.

Evidence was received without objection that Pickens admitted to a police officer that he shot someone but had

"no intention to"; that "he was not in any argument . . . and couldn't give any reason for drawing the gun and using it other than to stop the fight that was in progress"; and that "the crowd moved back toward him and he thought they might be planning to take the gun away from him," and he then drew and fired. At the trial of a prosecution against Pickens he said in answer to a question by the judge, "I can't reckon while [why?] I pulled that gun. I just got all upset. I didn't intend to shoot anybody."

The jury specially found that Pickens and not West fired the shots, but they also returned a general verdict for the plaintiff. Later, on leave reserved, the judge entered a verdict for the defendant.

In this there was no error. If we assume, but without deciding, that it could have been found that, even though West fired no shots, the defendant was negligent with respect to patrons in the position of the plaintiff by reason of the manner in which West as the defendant's agent dealt with or participated in an altercation on the premises, or by reason of failure to call the police officer more speedily (see *McFadden* v. *Bancroft Hotel Corp.* 313 Mass. 56, 59–60), we are of opinion, nevertheless, that the defendant cannot be held liable for the shooting by Pickens, which was the immediate cause of the injury to the plaintiff. There was no evidence whatever tending to associate Pickens in any way with the original quarrel. His act in opening fire was an act of human volition emanating from a new source entirely independent of the defendant and was not a normal response to any situation which on the evidence the jury could find had been brought about by any negligence of the defendant. Even if the jury could find that Pickens's real purpose was to stop the quarrel, his method of stopping it by repeatedly shooting a revolver in a room full of people, while doing nothing else to separate the disputants or to protect one against the other, was such an outrageous method of ending a dispute that it cannot reasonably be called a consequence of any act for which the defendant was responsible. Even looking backward after the event, the act of Pickens appears extraordinary rather than normal. It brought about

harm substantially different from any that would probably have resulted from the comparatively harmless scuffle that had preceded it. It was a new wrong for which Pickens was almost certainly liable to the plaintiff, and it involved a substantial degree of culpability on the part of Pickens. It thus met all or practically all of the tentative tests suggested by § 442 of the Restatement of Torts for determining that an intervening force is a new cause entirely superseding that which has gone before and breaking the causal connection between that and the injury. From the moment when Pickens began shooting any negligence of the defendant faded out of sight and ceased to be a substantial contributing cause of what followed. In the language of § 447, comment g, of the Restatement of Torts the conduct of Pickens was "so reckless as to make it appear an extraordinary response" to any situation created by the defendant and therefore "a superseding cause of the . . . [plaintiff's] harm." *Galbraith* v. *Levin, ante,* 255. *Bellows* v. *Worcester Storage Co.* 297 Mass. 188, 196–197. *Smith* v. *Peach,* 200 Mass. 504. *Slater* v. *T. C. Baker Co.* 261 Mass. 424. *Sullivan* v. *Griffin,* 318 Mass. 359.

The plaintiff has cited many cases, including such leading cases in this Commonwealth on legal cause as *Lane* v. *Atlantic Works,* 111 Mass. 136, *Burke* v. *Hodge,* 217 Mass. 182, *Horan* v. *Watertown,* 217 Mass. 185, *Leahy* v. *Standard Oil Co. of New York,* 224 Mass. 352, *Morrison* v. *Medaglia,* 287 Mass. 46, and *Wallace* v. *Ludwig,* 292 Mass. 251. We do not consider the present decision in conflict with any of the cases cited or with any of the numerous additional cases which we have examined.

Several other points were saved, but one of these was waived at the argument, and the view we have taken has rendered the others immaterial.

*Exceptions overruled.*