DAVID FLOOD *vs.* SOUTHLAND CORPORATION & another.[1]

Middlesex. April 8, 1993. - August 5, 1993.

Present: WILKINS, ABRAMS, NOLAN, LYNCH, O'CONNOR, & GREANEY, JJ.

*Negligence*, Intentional conduct, Foreseeability of harm, Comparative, Re-
tailer, Duty to prevent harm, Proximate cause. *Practice, Civil*, Instruc-
tions to jury, Parties. *Evidence*, Guilty plea, Admissions and confes-
sions. *Proximate Cause.*

At the trial of negligence claims against the corporate owner of a conve-
nience store (the store) and an individual who admitted stabbing the
plaintiff while on the store's premises, the judge erred in not submitting
the question to the jury whether the individual defendant's stabbing of
the plaintiff was intentional and not negligent where, if the stabbing
was intentional, the individual defendant's conduct would not be in-
volved in the jury's comparative negligence assessment under G. L. c.
231, § 85, and where proof that the individual defendant intentionally
rather than negligently stabbed the plaintiff would tend to increase the
prospect that a jury would conclude that the stabbing was not a reason-
ably foreseeable intervening act for which the store would be responsi-
ble. [64-65] O'CONNOR, J., concurring, with whom LYNCH, J., joined.
Discussion of this court's position on the manner by which the right to
challenge a judge's jury instructions on appeal may be preserved. [66-
67].
Where a new trial was to be ordered in any event on negligence claims
against the corporate owner of a convenience store (the store) and an
individual who admitted stabbing the plaintiff while on the store's
premises, the opportunity was not presented for this court to decide
whether the store adequately protected its appellate rights as to issues
concerning instruction to the jury on the individual defendant's alleg-
edly intentional stabbing of the plaintiff. [67-68]
At the retrial of negligence claims against the corporate owner of a conve-
nience store (the store) and an individual who admitted stabbing the
plaintiff while on the store's premises, the judge should admit the
store's proffered evidence that, in connection with the incident, the indi-
vidual defendant had pleaded guilty to charges of armed assault with
intent to murder and assault and battery by means of a dangerous

---

[1]John Darcy.

weapon where, in light of this court's acceptance of the principles of rule 803 (22) of the Proposed Massachusetts Rules of Evidence, evidence of the individual defendant's convictions upon pleas of guilty would be admissible against the plaintiff and the individual defendant. [68-71] O'CONNOR, J., concurring, with whom LYNCH, J., joined.

At the trial of negligence claims against the corporate owner of a convenience store (the store) and an individual who admitted stabbing the plaintiff while on the store's premises, the judge properly denied the store's motions for a directed verdict and for judgment notwithstanding the verdict, where the jury was warranted, in light of events prior to the stabbing, in determining that a risk of harm, the stabbing of someone, was reasonably foreseeable. [71-73] O'CONNOR, J., dissenting, with whom LYNCH, J., joined.

CIVIL ACTION commenced in the Superior Court Department on October 31, 1980.

The case was tried before *Katherine Liacos Izzo*, J., and posttrial motions were heard by her.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Thomas D. Burns* (*John J. McGivney* with him) for Southland Corporation.

*Edward M. Swartz* (*Alan L. Cantor* with him) for the plaintiff.

WILKINS, J. The plaintiff sustained serious injuries one night in August, 1979, when the defendant John Darcy stabbed him outside a Wakefield 7-Eleven store operated by the corporate defendant (Southland). Because of several prejudicial rulings of the trial judge, the Appeals Court vacated the judgment that the plaintiff had obtained against Southland and Darcy and remanded the case for a new trial on liability only. *Flood* v. *Southland Corp.*, 33 Mass. App. Ct. 287, 302-303 (1992).

We allowed the plaintiff's application for further appellate review. We did so principally to consider the Appeals Court's ruling that evidence would be admissible at the new trial that the plaintiff's assailant Darcy had pleaded guilty to armed assault with intent to murder the plaintiff and to assault and battery on the plaintiff by means of a dangerous weapon. *Id.*

at 293-296. To put that evidentiary issue in perspective, we shall first consider the plaintiff's challenge to the Appeals Court's determination that the judge erred in not submitting the question to the jury whether Darcy's stabbing of the plaintiff was intentional and not negligent. *Id.* at 299. The issue whether Darcy's conduct was intentional, and the admissibility of evidence bearing on his intent, are important for two reasons. First, if the stabbing was intentional, Darcy's conduct would not be involved in the jury's comparative negligence assessment (G. L. c. 231, § 85 [1992 ed.]). Second, proof that Darcy intentionally rather than negligently stabbed the plaintiff would tend to increase the prospect that a jury would conclude that the stabbing was not a reasonably foreseeable intervening act for which Southland would be responsible. Finally, we shall briefly discuss Southland's argument, rejected by the Appeals Court (33 Mass. App. Ct. at 296-299), that the judge should have allowed its motions for a directed verdict and for judgment notwithstanding the verdict. We agree with the Appeals Court that various errors require that there be a new trial on liability.[2]

1. The trial judge should have put the question to the jury whether Darcy intentionally stabbed the plaintiff. There was,

---

[2] We concur with the Appeals Court's conclusions and reasoning in the sections of its opinion numbered 8 (error in the instruction that Southland was held to the standard of an expert in providing security for its customers) and numbered 10 (requiring an instruction, on request, concerning the consequences of the application of the comparative negligence statute to all parties if the effect of that statute as to the plaintiff is mentioned). The plaintiff did not explicitly ask us to consider these issues in his application for further appellate review. They are nevertheless before us. See *Bradford v. Baystate Medical Ctr.*, 415 Mass. 202, 204 (1993). We agree with the Appeals Court's conclusions on the other issues that we do not discuss.

By a supplemental brief, filed after our allowance of the application for further review (see Mass. R. A. P. 27.1 [f], as amended, 367 Mass. 922 [1975]), Southland raises challenges to the judgment not presented in any brief it filed with the Appeals Court. The argument that the plaintiff should lose because he was a trespasser is particularly inappropriate because counsel for Southland expressly waived the claim at trial ("I don't think there's any evidence that anybody can find that they were trespassers"). Subsequently, we shall comment briefly on two other late contentions. See note 11 below.

as the Appeals Court said (*id.* at 299), evidence warranting an inference that Darcy acted intentionally.[3] If, as we have said, the stabbing was intentional and not the unintended consequence of negligent youthful horseplay, the likelihood would be greater that the jury would conclude that conduct such as Darcy's was not reasonably foreseeable and, therefore, Southland owed no duty of care to the plaintiff in the circumstances. It was also important for the purposes of the comparative negligence statute (G. L. c. 231, § 85) for the jury to decide whether Darcy intentionally stabbed the plaintiff or did so negligently.

Section 85 of G. L. c. 231 speaks only of contributory negligence and of negligence attributable to plaintiffs and defendants. Intentional tortious conduct cannot be negligent conduct. *Waters* v. *Blackshear*, 412 Mass. 589, 590 (1992). If a defendant's misconduct was intentional, that misconduct is not involved in the application of § 85. See *Lane* v. *Meserve*, 20 Mass. App. Ct. 659, 663 n.6 (1985); V.E. Schwartz, Comparative Negligence § 5.2, at 97 (2d ed. 1986); H. Woods, Comparative Fault § 7.1, at 165 (2d ed. 1987 & Supp. 1993). It is not surprising that a court which has held that § 85 does not apply even to a breach of warranty action (see *Correia* v. *Firestone Tire & Rubber Co.*, 388 Mass. 342, 353 [1983]) should hold that § 85 does not apply to intentional tortious conduct. A contrary conclusion would result in § 85 reducing plaintiffs' recoveries in cases to which the concept of contributory fault had no common law application, an unlikely legislative intention. The strong majority view across the country is that comparative fault statutes do not apply to intentional tort claims, with exceptions arising especially where the statute uses terms broader than negligence, such as "culpable conduct" or "fault." See V.E. Schwartz, *supra* at § 5.2, at 97-100; H. Woods, *supra* at § 7.1, at 165-167 (2d ed. 1987 & 1993 Supp.).

---

[3]For example, Darcy's statement, twice made, that he would stab him if the plaintiff hit him.

The plaintiff does not seriously challenge the significance of Darcy's intention in this case, beyond his claim, which we and the Appeals Court have rejected, that there was no evidence that Darcy intended to stab the plaintiff. He contends rather that Southland failed to preserve its challenge to the judge's failure to instruct the jury to decide whether the stabbing was intentional and, if it was, to instruct concerning its significance to the case. Although there must be a retrial on other grounds, we consider this argument, one made to the Appeals Court but not discussed by it. In doing so, we hope to assist in an understanding of this court's position on the manner by which the right to challenge a judge's jury instructions on appeal may be preserved.

Rule 51 (b) of the Massachusetts Rules of Civil Procedure, 365 Mass. 816 (1974), provides in part: "No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection." A general objection to a portion of a charge will not save appellate rights. See *Huff* v. *Holyoke*, 386 Mass. 582, 583 n.2 (1982). Nor will a blanket objection to a judge's failure to give a party's requested instructions. See *Narkin* v. *Springfield*, 5 Mass. App. Ct. 489, 491 (1977). If a party requests an instruction, the judge does not give it, the party objects after the charge was given and explains the significance of the request, and the judge acknowledges an understanding of the issue but nevertheless declines to give the instruction, the requirements of rule 51 are unquestionably satisfied. See *Collins* v. *Baron*, 392 Mass. 565, 568 n.3 (1984). Counsel proceeds at considerable peril in objecting to a jury charge simply by reference to discussions had, and rulings made, during a charge conference, in the absence of some acknowledgement by the judge that the procedure was sufficient to alert the judge to the grounds of the objection. See *Finberg Mfg. Co.* v. *Carter*, 16 Mass. App. Ct. 1013, 1014 (1983). Cf. *Simmons* v. *Yurchak*, 28 Mass. App. Ct. 371, 379 (1990). Also, a postcharge objection to the failure to give an instruction, made simply by reference to

the number of the requested charge, normally will not satisfy rule 51 unless the judge requests that counsel follow such a procedure and assures counsel that the objection is understood. *Stepakoff* v. *Kantar*, 393 Mass. 836, 839-840 (1985). Where instructions not given are the subject of a charge conference at which the judge specifically rules that those instructions will not be given and objections to those rulings are then made, and where the party renews the objection after the charge without restating reasons, the purpose of rule 51 (b) to put the judge on notice is fairly met. See *Little* v. *Green*, 428 F.2d 1061, 1070 (5th Cir.), cert. denied, 400 U.S. 964 (1970); 9 C.A. Wright & A.R. Miller, Federal Practice and Procedure § 2553, at 638-639 (1971 & Supp. 1993). Indeed, there can be circumstances where the request, the pretrial ruling, and the objection to the ruling are so explicit that a postcharge objection need not be made. See *Brown* v. *AVEMCO Inv. Corp.*, 603 F.2d 1367, 1370-1373 (9th Cir. 1979); 9 C.A. Wright & A.R. Miller, *supra* at § 2553, at 639-640; 5A Moore's Federal Practice par. 51.04, at 51-29 — 51-31 (1993).[4] Cautious counsel, however, wisely will renew any earlier objection with specificity after the charge unless the judge then instructs otherwise. We reject the hard and fast approach of the United States Court of Appeals for the First Circuit which apparently requires, under the similar Federal rule, that all relevant events must occur after the charge. See *Transnational Corp.* v. *Rodio & Ursillo, Ltd.*, 920 F.2d 1066, 1069 (1st Cir. 1990).[5]

In this case, the judge ruled at the charge conference that she would not give any of Southland's requested instructions concerning Darcy's allegedly intentional conduct. Southland's counsel objected at that time, and the issue of Darcy's

---

[4]In *Commonwealth* v. *Grenier*, 415 Mass. 680, 686 n.8 (1993), we accepted, under the cognate criminal procedure rule, an objection registered at a charge conference at which the judge told counsel that appellate rights were preserved.

[5]That court might treat the issue, however, under a narrow plain error exception to rule 51. See *Smith* v. *Massachusetts Inst. of Technology*, 877 F.2d 1106, 1110 (1st Cir.), cert. denied, 493 U.S. 965 (1989).

allegedly intentional conduct was discussed in connection with the comparative negligence statute. Southland made the sound argument that an intentional tort is not included in the comparison to be made under G. L. c. 231, § 85. It was at this point that the judge said that "[t]here was no evidence that it was an intentional act." After the charge, counsel for Southland objected to the omission of two requested instructions concerning Darcy's intentional conduct, neither of which explained to the jury what they should do were they to find that Darcy intentionally stabbed the plaintiff. Neither of them concerned the comparative negligence statute. Southland's counsel did not then object to the judge's failure to charge concerning the effect of the comparative negligence statute if the jury should find that Darcy intentionally stabbed the plaintiff. Because there is to be a new trial ordered in any event, we need not decide whether Southland adequately protected its appellate rights as to issues concerning instructions on Darcy's allegedly intentional stabbing of the plaintiff.[6]

2. At the retrial, evidence will be admissible that Darcy pleaded guilty to, and was convicted of, two serious crimes, each requiring proof that Darcy intentionally stabbed the plaintiff. Darcy's intention when he stabbed the plaintiff is, as we have said, a material issue in this case. Darcy's guilty pleas are relevant to that issue as tending to prove that he stabbed the plaintiff intentionally. Southland sought to admit evidence of the guilty pleas solely on the ground that they

---

[6]The issue is close. Southland did make an explicit request at the charge conference for an instruction concerning the effect of G. L. c. 231, § 85 (1992 ed.), if the jury were to find Darcy intentionally stabbed the plaintiff, but Southland failed to return to the point after the charge. Southland requested an instruction concerning the effect of an intentional stabbing as the basis for a finding that Southland was not the cause of the plaintiff's injuries, and Southland properly objected to its omission from the charge. But then Southland addressed the point only in passing in its Appeals Court brief. See note 2, second par., above and note 11 below.

This appears, in any event, to be a situation in which a plain error exception to rule 51 might be appropriately applied. See 9 C.A. Wright & A.R. Miller, Federal Practice and Procedure § 2558, at 675 (1971); 5A Moore's Federal Practice, par. 51.04, at 51-14 — 51-22 (1993).

were admissions of a party opponent.[7] The trial judge rejected the argument that the guilty pleas were admissions of a party opponent. The Appeals Court concluded, however, that Southland's position and Darcy's position were sufficiently adverse that the hearsay exception allowing admissions of a party opponent in evidence should extend to the admission of the guilty pleas as probative of his intention. 33 Mass. App. Ct. at 295-296. We shall return to this issue, but first we shall discuss an independent and dispositive ground for the admissibility of evidence of the convictions and guilty pleas.

The intention of a person can be determined only indirectly through that person's words and deeds. Darcy's guilty pleas seem inherently reliable as words and deeds indicative of his state of mind when he stabbed the plaintiff.[8] The inherent reliability of such a manifestation of intent is apparent, and, if there were not a hearsay exception that made such pleas admissible in this situation, we would be inclined to create one.[9] We need not do so, however, because there is a rule of evidence that makes Darcy's pleas admissible.

---

[7]It is not explicit on the record that Southland wished, as it now claims, to use the two convictions to impeach Darcy. Southland did not use the word "impeachment" in arguing that it had the right to cross-examine Darcy about his guilty pleas. His guilty pleas were prior inconsistent statements relevant to a material issue in the case, and evidence of them would have been admissible for impeachment purposes. The bare fact of Darcy's criminal convictions could have been used to impeach him. See G. L. c. 233, § 21 (1992 ed.). Southland, of course, optimally wanted to use the convictions and guilty pleas as probative evidence against the plaintiff, as well as Darcy.

[8]A judge took the guilty pleas, we assume, in the usual manner. Darcy was represented by counsel. He had time for reflection and for consultation with his counsel and others. There was, we also assume, a full colloquy with the judge who accepted the pleas. In that process, Darcy was presumably informed of each element of the crimes charged and, thereafter, he knowingly and voluntarily pleaded guilty.

[9]Darcy's guilty pleas are declarations against his penal interest but, under the principles that we have adopted to date, the declarant must be unavailable for such a declaration to be admissible for probative purposes. See *Commonwealth* v. *Carr*, 373 Mass. 617, 624 n.11 (1977). See also Fed. R. Evid. 804 (b) (3); Proposed Mass. R. Evid. 804 (b) (3).

Rule 803 (22) of the Proposed Massachusetts Rules of Evidence, substantively identical to the Federal rule of the same number, provides that the hearsay rule does not exclude "[e]vidence of a final judgment, entered . . . upon a plea of guilty . . . adjudging a person guilty of a crime punishable by . . . confinement in excess of one year, to prove any fact essential to sustain the judgment . . . ."[10] Under this rule, evidence of Darcy's convictions upon pleas of guilty would be admissible against the plaintiff and Darcy (see M.H. Graham, Federal Practice and Procedure § 6773, at 728 [1992]), but would not be binding even on Darcy (see *Aetna Casualty & Sur. Co.* v. *Niziolek*, 395 Mass. 737, 747 [1985]). Substantially more than one-half of the States have adopted rules of evidence similar to Fed. R. Evid. 803 (22). See 4 Weinstein's Evidence, par. 803 (22) [02] (1992 & Supp. Mar. 1993). Consistent with our continuing practice, on a case-by-case basis, of considering the adoption of principles set forth in the Proposed Massachusetts Rules of Evidence, we accept the principles of proposed rule 803 (22).

We add a few observations about the Appeals Court's application to this case of the exception for admissions of a party opponent. 33 Mass. App. Ct. at 293-296. We agree with the Appeals Court's summary of the law of the Com-

---

[10]Proposed rule 803 (22) reads as follows:

"The following are not excluded by the hearsay rule, even though the declarant is available as a witness: . . .

"(22) Judgment of previous conviction. Evidence of a final judgment, entered after a trial or upon a plea of guilty (but not upon a plea of nolo contendere), adjudging a person guilty of a crime punishable by death or confinement in excess of one year, to prove any fact essential to sustain the judgment, but not including, when offered by the Commonwealth in a criminal prosecution for purposes other than impeachment, judgments against persons other than the accused. The pendency of an appeal may be shown but does not affect admissibility."

In this case, the crimes are punishable by imprisonment of more than one year. See G. L. c. 265, § 18 (*b*) (1992 ed.) (assault with intent to murder while armed with a dangerous weapon, up to twenty years); G. L. c. 265, § 15A (*b*) (1992 ed.) (assault and battery by means of a dangerous weapon, up to ten years).

monwealth on this issue. We also agree that two parties who are not opponents in a pleadings sense could have adverse positions on some issue. In some circumstances evidence offered by one such party of an admission made by the other party could properly be admitted in application of the principles underlying the party opponent rule. The problem in this case is that Southland concedes on appeal that, on the theory of party opponent admissions, the convictions and guilty pleas were admissible only against Darcy. At trial, however, Southland made no such limited offer. The judge's exclusion of the evidence of Darcy's guilty pleas was correct for this reason alone. In any event, the admission of that evidence only against Darcy could have confused the jury in deciding the question of Darcy's intent in stabbing the plaintiff and in deciding how to allocate comparative fault. It is true that, in certain respects, Southland and Darcy were adversaries, as the Appeals Court said. *Id.* at 295-296. But where the plaintiff also opposed the introduction of Darcy's guilty pleas, the jury could have been confused by the admission of that evidence against only Darcy, and for that reason the judge might properly have excluded that evidence in her discretion.

The appropriate result at retrial would be to admit that evidence against both the plaintiff and Darcy rather than exclude it. In this case, that result can be obtained through application of the principles underlying Proposed Mass. R. Evid. 803 (22), and we need not decide the question under the rule concerning admissions of a party opponent.

3. The judge properly denied Southland's motions for a directed verdict and for judgment notwithstanding the verdict. As presented to the Appeals Court, Southland's argument was that it was not reasonably foreseeable that Darcy would stab the plaintiff and hence Southland had no duty to take steps to prevent or discourage such an attack. Although there had been numerous problems with youthful conduct at or near the store, there had been, so the argument goes, no serious injury at the site. Moreover, Southland continues, although there was evidence that criminal activity might be reasonably foreseen at such a store and although certain se-

curity precautions could reasonably have been taken but were not, Southland could not have reasonably foreseen the specific injury that the plaintiff sustained in "drunken horseplay between two teenage friends." Finally, Southland argues, evidence of its employee's knowing specific facts about the boys, which included their being "pretty high" and Darcy displaying a knife, would not warrant finding that Southland's employee reasonably should have foreseen any danger to the plaintiff.[11]

Southland owed a duty of reasonable care to the plaintiff (*Mounsey* v. *Ellard*, 363 Mass. 693, 707-708 [1973]) to prevent injury by third persons whether their acts were accidental, negligent, or intentional (*Carey* v. *New Yorker of Worcester, Inc.*, 355 Mass. 450, 452 [1969]). Southland argues, however, that it owed no duty to the plaintiff in this case because the risk that led to the plaintiff's injury was not one which could be reasonably anticipated by the defendant. *Foley* v. *Boston Hous. Auth.*, 407 Mass. 640, 646 (1990). In deciding on the reasonable foreseeability of harm, all the circumstances are examined. *Mullins* v. *Pine Manor College*, 389 Mass. 47, 56 (1983). *Mounsey* v. *Ellard, supra* at 707-709. The Appeals Court did precisely that and reached the proper conclusion. 33 Mass. App. Ct. at 298-299.

We write only to deal explicitly with the claim that there was no duty because it was not reasonably foreseeable that

---

[11]In its supplemental brief, which, as we have said, presented new issues (see note 2 above), Southland makes two arguments which we discuss as guidance at any new trial. We pass by the apparent untimeliness of raising issues in this court not presented on brief to the Appeals Court on a properly preserved challenge to an adverse trial court ruling. See *Phillips* v. *Youth Dev. Program, Inc.*, 390 Mass. 652, 660 (1983). Southland argues that the stabbing was intentional as a matter of law and that, because the jury found the plaintiff to have been five times as negligent as Southland (25% and 5% respectively), judgment should have been entered for Southland. This argument falters at least because it was a jury question whether the stabbing was intentional.

Second, Southland asserts that the plaintiff's provocation of Darcy as a matter of law was a supervening event breaking any causal connection between any breach of duty by Southland and the plaintiff's injury. This too was a jury question.

one customer would stab another. The resolution of this contention is relatively easy in this case because of the information that Southland's employee had about Darcy and the plaintiff. He knew that they were "pretty high," that Darcy had a knife, and that the boys were gathered just outside the store where he could not see them. A jury would be warranted in such circumstances in determining that a risk of harm, the stabbing of someone, was reasonably foreseeable. See *Carey* v. *New Yorker of Worcester, Inc.,* *supra* at 451-453. The way in which the stabbing occurred and the fact that the plaintiff might be the one to be harmed need not have been reasonably foreseeable. That these events occurred within the reasonably foreseeable risk of harm was enough to present a jury question.[12]

4. The judgment is vacated, and the case is remanded to the Superior Court as to all parties on the question of liability only, including, however, the application of the comparative negligence statute.

*So ordered.*


O'CONNOR, J. (concurring in part and dissenting in part, with whom Lynch, J., joins). I agree that the trial judge erred in not putting to the jury the question whether Darcy intentionally stabbed the plaintiff. Also, I agree that, if the case against Southland Corporation (Southland) is retried, Darcy's guilty pleas should be admitted in evidence against the plaintiff and Darcy. However, I do not agree that the case against Southland ought to be remanded for a new trial. In my view, the judge erred in denying Southland's motions

---

[12]Of course, evidence that Southland reasonably should have taken certain general security precautions in its Wakefield store, and evidence of numerous problems with youth disturbances there, also related to the reasonable foreseeability of the risk of harm. We need not, however, decide whether this evidence alone, taken collectively or viewed in individual aspects, would have warranted a finding that there was a reasonably foreseeable risk of harm.

for a directed verdict and for judgment notwithstanding the verdict. The judgment against Southland should be reversed and the court should order the entry of a judgment in Southland's favor.

Surely, as the court states, *ante* at 72, "Southland owed a duty of reasonable care to the plaintiff . . . to prevent injury by third persons whether their acts were accidental, negligent, or intentional." The question raised by Southland's motions for a directed verdict and judgment notwithstanding the verdict and this appeal, though, is whether the evidence most favorable to the plaintiff warranted the jury's finding that Southland had violated that duty either by doing something that in all the circumstances a reasonably prudent storekeeper would not have done, or by failing to do something that in all the circumstances a reasonably prudent storekeeper would have done, thereby proximately causing the plaintiff's injuries. In support of its determination that the judge correctly denied Southland's motions, the court says little more than that the Appeals Court conducted a proper analysis and reached the right result. The court refrains from discussing the evidence except for noting that the plaintiff's injuries were sustained when the defendant Darcy stabbed the plaintiff outside the Wakefield 7-Eleven store operated by Southland, *ante* at 63, and Southland's employee knew that Darcy and the plaintiff were "pretty high" and that Darcy had a knife. The court also notes that, when the stabbing occurred, Darcy, the plaintiff, and two other boys were gathered just outside the store where the clerk could not see them.

The following is a more complete recitation of the relevant evidence. The plaintiff and Darcy, both seventeen years old, had been friends for a long time. On the evening that Darcy stabbed the plaintiff, the two boys had attended a party at which they had drunk a considerable amount of beer and Darcy had smoked marihuana. Darcy normally carried a buck knife in a sheath on his belt and he had the knife with him when he went to the party. He gave it to someone at the

party for use in connection with a beer keg. Darcy did not see the knife again until he was at the 7-Eleven store.

Darcy, the plaintiff, and two other boys left the party and they entered the 7-Eleven store shortly before midnight. The store clerk, Southland's employee Thomas Conomackos, testified in a deposition as follows: The boys "fanned out. So I figured they were up to some shinnanegans. They were walking around the store. I was trying to keep an eye on everybody. They made a few small purchases. One of the guys bought a sandwich. I think it was Darcy. Initially there was no real incident or anything. I just thought they were — basically I thought someone was going to try and grab something. So I watched them. And off they went outside." According to Conomackos, the boys "seemed like they were pretty high." Conomackos testified that, about fifteen minutes after the boys first went into the store, Darcy returned to complain about the sandwich he had bought. "He said he didn't like the sandwich. It was cold. It was a frozen sandwich to begin with. He had eaten over half of it. I said I can't give you your money back. I just had the feeling he was just trying to get his money back. He ate what he wanted. He just had an attitude. So I told him he'd better leave. He said something. He wasn't really quite confronting me, but he was muttering some things. I said to watch what you say and get out of the store."

Conomackos testified that a few minutes after Darcy left the store, Conomackos had a conversation with the plaintiff: "Basically he was telling me — he was giving me a warning that this kid, that Darcy was pretty upset about the sandwich. And he had a knife. And he was intimating to me that there may be some trouble and for me to be careful. I told him don't worry about it, I can handle myself and tell his cohort there not to do anything foolish." Then, according to Conomackos, the plaintiff went outside the store to an area called the "blind spot" that could not be seen from inside the store. About ten or twelve minutes later, one of the boys came into the store and told Conomackos that the plaintiff had been stabbed.

Darcy, too, testified that there was no problem when the
boys were in the store. He also testified that, outside the
store the plaintiff said "something to the effect '[Y]ou want
to fight?' kiddingly, and showed me my knife." That was the
first time Darcy had seen it since giving it to someone at the
party. When the plaintiff asked Darcy if he wanted to fight,
Darcy testified that he "[j]ust went over to [the plaintiff],
and kind of grabbed him, just tried to get [the knife] away
from him." He testified, "[W]e just kind of wrestled around,
and I don't know how I got it back, but I got the knife
back." The next thing Darcy knew, he "was against the wall,
and [the plaintiff] was holding [Darcy] up against the wall
with his arm up against in front of [Darcy's] neck, and his
other hand up. . . . [The plaintiff] said that he was going to
hit [Darcy]" and Darcy said "that if he hit [Darcy] that
[Darcy would] stab him." According to Darcy's testimony,
the plaintiff "just slapped [him] across the face," and then
Darcy stabbed the plaintiff. When he realized what he had
done, Darcy testified, he said something like, "Oh, my God,"
and he hugged the plaintiff. Then, the plaintiff told Darcy to
run.

Paul Scott, who was one of the four boys in the 7-Eleven
store, testified that there were no problems in the store; that
it was "pretty quiet." He testified that, after buying some
things, the boys went outside, sat down, ate their sandwiches,
talked and "nothing was going on," until the plaintiff and
Darcy scuffled. When the plaintiff said, "I'm going to punch
you," and Darcy said, "If you do, I'm going to stab you," the
boys "didn't think anything about it, because it was sort of
horseplay."

The recitation of evidence set forth above fairly states in
the light most favorable to the plaintiff all the eyewitness tes-
timony concerning the events surrounding the plaintiff's in-
jury. In addition to that testimony, the plaintiff "introduced
in evidence numerous internal documents of Southland con-
cerning security and loss prevention due to robbery. Included
in the robbery prevention material designed for employees
was a directive that clerks 'know what's happening outside

the store.' " 33 Mass. App. Ct. at 292. The plaintiff also introduced the deposition testimony of Southland's northeast division loss prevention manager that "Southland was concerned about gang unruliness as well as robbery. He stated that from the point of view of safety it was important that the store clerk have a clear view outside the store." *Id.*

In addition, the plaintiff introduced the testimony of a security expert who "testified that the design of the Wakefield 7-Eleven was inadequate because there was a blind spot which blocked the clerk's view of activity outside the front of the store. It was [the expert's] opinion that there was a 'negligent situation' at the Wakefield 7-Eleven because the store personnel were not adequately trained in security and the store lacked security officers and security hardware such as closed-circuit television and direct alarm systems to a central station or the police. [The expert] also testified that Conomackos should have called the police when he noticed that the boys were intoxicated and presented an inflammatory situation. He should have been aware of the activities outside the store, and he should have called the police when he learned that Darcy had a knife.

"Wakefield police reports were introduced showing that between January 1, 1978, and August 31, 1979, forty-two calls had been made requesting police assistance at or about the 7-Eleven store's premises for reasons including 'kids causing trouble,' 'youths causing disturbance' and 'youths fighting.' " *Id.* at 292-293.

Relying not only on the evidence that bore on the events leading up to the stabbing,[1] but also on the aforementioned police reports about "youth disturbances" and the testimony of Southland's loss prevention manager and the plaintiff's ex-

---

[1]The Appeals Court states that Conomackos, the store clerk (night manager), "knew that Darcy was displaying a knife," and that "[t]he stabbing took place about ten to twelve minutes after Conomackos was told of the knife." *Flood* v. *Southland Corp.*, 33 Mass. App. Ct. 287, 298 (1992). See also *supra* at 75-76. There is no evidence in the record that Darcy "displayed" a knife before he wrested his knife from the plaintiff and immediately stabbed him.

pert, the Appeals Court concluded, 33 Mass. App. Ct. at 298, that "[i]t is not necessary that Southland have foreseen precisely the manner in which [the plaintiff's] injuries were inflicted. See *Luz* v. *Stop & Shop, Inc. of Peabody*, 348 Mass. 198, 204 (1964). It is enough that Southland should have realized that there was preventable real danger to its patrons. See *Carey* v. *New Yorker of Worcester, Inc.*, [355 Mass. 450, 452 (1969)]."

Today, the Supreme Judicial Court agrees with the Appeals Court's holding and rationale, stating that "[a] jury would be warranted in [the] circumstances in determining that a risk of harm, the stabbing of someone, was reasonably foreseeable. See *Carey* v. *New Yorker of Worcester, Inc.*, *supra* at 451-453. The way in which the stabbing occurred and the fact that the plaintiff might be the one to be harmed need not have been reasonably foreseeable. That these events occurred within the reasonably foreseeable risk of harm was enough to present a jury question." *Ante* at 73.

I disagree. Perhaps it is fairly arguable that the evidence warranted a finding that operation of the type of store that was involved in this case without the store clerk having a full view of the premises outside the store and without security officers, closed-circuit television, and a direct alarm system constituted negligence. I need not discuss that point because, in any event, the evidence was clearly insufficient to prove that any such negligence was the proximate cause of the plaintiff's injuries.

This case bears little resemblance to *Carey* v. *New Yorker of Worcester, Inc.*, *supra*, on which the Appeals Court and this court rely. In *Carey*, the plaintiff, a patron in the defendant's bar and restaurant, was shot by another patron. The assailant was " '[a]bsolutely drunk,' and for some time had been staggering up and down the aisle going back and forth to the entrance to the bar, and yelling toward someone at the bar or for the waitress. He was loud and very noisy, 'just a fresh kid.' On two previous occasions he had been made to leave the premises by the police, and had twice been refused service. He was known to be a troublemaker by the

defendant's employees. He looked young and was under age. On [the occasion of the shooting] his group of four was served two rounds of whiskey and beer by the waitress. Of this he drank whiskey. He had been drinking elsewhere before he arrived at the defendant's premises." *Id.* at 451. In concluding that the evidence was sufficient to impose liability, the court reasoned: "It was open to the jury to find that the defendant's employees had general knowledge of [the assailant's] previous experience as a patron and should have realized on the occasion [there] considered the need for repressing him. . . . The defendant [was] in error in claiming that there were no warnings of trouble. There had been commotion and boisterous behavior and continued drinking. That there had been no express threat to any patron is not conclusive. The jury in their judgment could find that the defendant's agents should have realized that there was real danger to others. . . . In the case at bar [the assailant] was an active participant in a steady disorder." *Id.* at 452. In *Carey,* the court held that that case fell "within the authority of *McFadden* v. *Bancroft Hotel Corp.* 313 Mass. 56 [1943], *Quigley* v. *Wilson Line of Mass. Inc.* 338 Mass. 125 [1958], and *Kane* v. *Fields Corner Grille, Inc.* 341 Mass. 640 [1961]." *Id.* at 452-453. In each of those cases, as in *Carey,* the evidence showed that the plaintiff, a patron of the defendant, was assaulted by another patron who was not only drunk but also had been boisterous and causing commotion prior to the assault. Those facts are significantly different from the facts of this case. Here the evidence did not suggest that Darcy was boisterous or generally disposed to aggression until immediately before the stabbing. The uncontradicted evidence was that there were no "problems" while the boys were in the store and there were no problems afterward, when they were outside the store, until the plaintiff asked Darcy if he wanted to fight. For all that appears, the stabbing took place immediately, or almost immediately, after the plaintiff spoke those words, much too soon for Conomackos, even if he had seen and heard everything that happened, to take preventive measures. Thus, if the negli-

gence the court has in mind is the lack of visibility of the premises outside the store from within, that negligence cannot properly be considered a cause, proximate or otherwise, of the plaintiff's injuries.

There is some suggestion in the opinion of the Appeals Court, apparently accepted by this court, that, apart from the design of the store, the jury also could have found the defendant negligent based on the plaintiff's expert's testimony that, when Conomackos learned that Darcy had a knife (not "displayed" a knife — see note 1, *supra*), Conomackos should have called the police, which he did not do. If it be assumed that the jury would have been warranted in finding Southland negligent on the strength of that evidence alone, or on the strength of that evidence together with the police reports, which is a dubious proposition, it does not follow that Southland's motions for a directed verdict and judgment notwithstanding the verdict were properly denied. The evidence was insufficient to show causation because the jury could only have speculated with regard to whether, had Conomackos notified the police that there was a boy outside the store, who was "high" and had a knife in his possession (and did not enjoy his sandwich), the police would have responded soon enough to have prevented the stabbing. The fact that the police arrived at the store five minutes after they were told that a stabbing had occurred sheds no light on that very different question. Also, as to causation, no help to the plaintiff is provided by the police reports, the testimony of Southland's loss prevention manager, or the testimony of the plaintiff's expert. That evidence bore only on the question of negligence, not causation.

The evidence does not warrant a finding that negligence of Southland caused the plaintiff's injuries. Southland's motions challenging the sufficiency of the plaintiff's evidence to warrant a verdict for the plaintiff should have been allowed. The motions should have been allowed for another reason, too. There was insufficient evidence, as a matter of law, to prove *proximate* causation. The absence of such evidence should be fatal to the plaintiff's case.

"Where as here the original negligence of the defendant is followed by the independent act of third persons which directly results in injurious consequences to the plaintiff, the defendant's earlier negligence may be found to be the direct and proximate cause of those injurious consequences, if according to human experience and in the natural and ordinary course of events the defendant ought to have seen that the intervening act was likely to happen. But if this is not the case, if the intervening act which was the immediate cause of the injury complained of was one which it was not incumbent upon the defendant to have anticipated as reasonably likely to happen, even though a high degree of caution would have shown him that it was possible, then he owed no duty to the plaintiff to anticipate such further acts, the chain of causation is broken and the original negligence cannot be said to have been the proximate cause of the final injury. *Lane* v. *Atlantic Works*, 111 Mass. 136 [1872]. *Stone* v. *Boston & Albany Railroad*, 171 Mass. 536 [1898]. *Glassey* v. *Worcester Consolidated Street Railway*, 185 Mass. 315 [1904]. *Jacobs* v. *New York, New Haven, & Hartford Railroad*, 212 Mass. 96 [1912]. In these cases the earlier decisions are so fully cited that we need not refer to them."

*Horan* v. *Watertown*, 217 Mass. 185, 186 (1914). See *Jesionek* v. *Massachusetts Port Auth.*, 376 Mass. 101, 105-106 (1978); *Addison* v. *Green Cafe, Inc.*, 323 Mass. 620, 622-623 (1949); *Morrison* v. *Medaglia*, 287 Mass. 46, 49-50 (1934); *Falk* v. *Finkelman*, 268 Mass. 524, 527 (1929); *Guinan* v. *Famous Players-Lasky Corp.*, 267 Mass. 501, 517 (1929).

Any negligence of Southland in this case was followed by the independent act of Darcy — stabbing the plaintiff — and the evidence did not warrant a finding that, "according to human experience and in the natural and ordinary course of events the defendant [or its servant, Conomackos] ought to have seen that the intervening act was likely to happen." *Horan* v. *Watertown, supra* at 186. It is indeed foreseeable

that a drunken, boisterous patron, if not controlled, will ultimately harm anyone within his reach, as was the case in *Carey* v. *New Yorker of Worcester, Inc.*, 355 Mass. 450 (1969), and the cases relied on by the *Carey* court, but it is not foreseeable "as reasonably likely to happen," *Horan, supra* at 186, that an intoxicated customer known to be in possession of an undisplayed knife while at a store with three friends, who is neither boisterous, nor aggressive, nor displaying hostility toward anyone other than the store clerk, would turn on one of his friends and stab him. The case of *Foley* v. *Boston Hous. Auth.*, 407 Mass. 640 (1990), is instructive. There, the plaintiff was assaulted by a fellow employee of the defendant housing authority. The court concluded that, despite the fact that the defendant could have foreseen that a *tenant* might assault the plaintiff, *id.* at 645, there was no evidence that a *fellow employee* might attack him, and therefore the attack was "outside the scope of the risk of foreseeable harm." *Id.* at 646. Here, too, even if the jury would have been warranted in finding that Darcy might assault Conomackos, there was not the slightest hint in the evidence that Southland or its employee should have foreseen that Darcy would stab his friend.

I would reverse the judgment and order the entry of judgment for the defendant.