Doerfer, J.
Defendant Philip B. Bard Co., Inc. d/b/a Phil’s Towing Service, moves for summary judgment on plaintiff Christopher Swank’s claim that the defendant breached the duty of care it owed to him. For the following reasons, the defendant’s motion is denied.
BACKGROUND
This case arises from an incident that occurred on the premises of Phil’s Towing Service. Mr. Swank was allegedly assaulted by Mr. Green on those premises as Mr. Swank .had been attempting to recover his car, which had been towed there.
The assault allegedly followed an argument between the two men some minutes before. Mr. Green has never been an employee of Phil’s Towing Service.
There are two issues to be decided in this case. The first issue is, even if the facts as alleged by the plaintiff axe taken as true, was the plaintiff owed a duty by the defendant for the defendant to have taken reasonable steps to protect the plaintiff from Mr. Green’s assault. The second issue to be addressed is whether or not there exists a genuine issue of material fact to be decided by a jury.
DISCUSSION
Summary judgment shall be granted when there are no material facts in dispute and the moving party is entitled to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community National Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c).
A. The Defendant’s Standard of Care.
Where an individual is on the premises of a business as a customer, it is the duty of the business to furnish reasonable or ordinary care for the safety of the individual in the circumstances. McFadden v. Bancroft Hotel Corp., 313 Mass. 56, 59 (1943). “What constitutes ordinary care varies with the circumstances of the given case.” Id. at 60. The business owner is not an insurer of the individual’s safety. Kane v. Field’s Corner Grille, Inc., 341 Mass. 640, 642 (1961). The business is not required by law to foresee and guard against unlikely danger and probable harm. Id. “The test is ‘foreseeable harm.’ ” Id If the acts of the assailant could be foreseen, then the business owed the individual a duty to furnish the individual protection. Id The method of assault does not need to be precisely foreseeable, however, to instill in the business such a duty to the individual. Carey v. New Yorker of Worcester, Inc., 355 Mass. 450, 452 (1969).
In McFadden, the court held that the jury could have found that, where there was a boisterous man who had been involved in a few near incidents, and where there were security personnel present who may have witnessed this behavior, in the performance of the duty resting upon the defendant to the plaintiff, the defendant should have taken some reasonable action to deal with this boisterous man before he assaulted the plaintiff. 313 Mass, at 60.
In Kane, the court held that a finding of defendant’s negligence was warranted where the jury found that for ten to twenty minutes the assailant had been acting boisterously, and where there were “ ‘words back and forth’; loud talk; ‘a lot of commotion,’ ” and where the bartender was warned of the fact the assailant would be trouble immediately before he attacked the plaintiff. 341 Mass, at 641.
In the present case, Mr. Swank alleges that, after calling Phil’s Towing Service to see if they had his car, and was told they did have it, his friend picked him up from where he was and drove him to Phil’s Towing Service. Aff. of Christopher Swank, p.2. He then alleges that, upon arriving at Phil’s Towing Service, he approached Mr. Green who was sitting on the porch of what the record indicates is a trailer used as the offices of Phil’s Towing Service. Id Mr. Swank then says that, believing Mr. Green to be an employee of Phil’s Towing Service, Mr. Swank explained to Mr. Green that his car had run out of gas, and that was why he had been forced to park it in a towing zone. He asked Mr. Green if he could have it back under those circumstances, without charge. Id. Mr. Green then allegedly told Mr. Swank, “No cash, no car,” and made gestures indicating that Mr. Swank should leave the premises. Id Mr. Swank allegedly persisted in his request, asking to speak to someone else who might be able to help him. Id Mr. Green then allegedly turned to Mr. Swank, while Mr. Green was allegedly still on the porch, and “shouted,” “Look asshole, I told you, no cash, no car, now get the fuck outta my face!” Id. at p. 2-3. Mr. Swank allegedly replied to Mr. Green that he thought he was a “rude asshole,” and that he wasn’t going to deal with him. Id at p. 3. Mr. Green then allegedly called Mr. Swank a “pretty boy faggot,” and told him repeatedly to get his “faggot ass” out of there. Id Mr. Swank alleges they argued for about two more minutes until Mr. Green “stated to walk towards (Mr. Swank) down the steps while continuously shouting obscenities at (him).” Id.
After this, Mr. Swank alleges he left the premises, went to get some money, and returned to the premises in order to get his car. He says he saw someone in the *696 trailer, got out of his car and took about five steps toward the trailer when Mr. Green assaulted him, shouting at him, and forcing him back onto a car, injuring him. Id. Eventually, others gathered, and the scene was interrupted by a woman allegedly running out of the trailer saying, “You didn’t hit him did ya? Tell me you didn’t hurt him Kevin?” Id.
In his deposition, Mr. Bard claimed to have heard the Mr. Green’s second confrontation and eventual assault from the trailer. Dep. of Philip B. Bard, p. 23. He claims he heard the commotion when it was ten to fifteen feet away from the trailer. Id.
The Court believes that if a jury believes the plaintiffs evidence, and if they come to the conclusion, as the plaintiff alleges, that Mr. Bard either heard or could have heard the initial confrontation between Mr. Green and Mr. Swank, it could be found that Mr. Bard should have taken reasonable steps to protect Mr. Swank from Mr. Green, because Mr. Green’s assault on him might have been foreseeable.
In McFadden, there was no indication that it was the amount of time the defendant observed the assailant that created a reasonable foreseeability for the defendant, but it was the fact the defendant “not only could have seen, but in fact did see” the assailant’s “activities” prior to the assault. 313 Mass, at 60. Similarly, in Kane the defendant for ten to twenty minutes observed the assailant acting “boisterously,” observed “loud talk” and “a lot of commotion." 341 Mass, at 641. The defendant in Kane was given notice that the assailant was under age and should be “shut off because there was going to be trouble” immediately prior to the assailant’s assault. Id.
In the present case, if the jury finds that Mr. Bard could have heard or did hear the first confrontation, which allegedly consisted of much shouting of obscenities, one side of which allegedly took place from the defendant’s trailer porch, the jury could find that the defendant had witnessed enough “commotion" or “boisterous” activity, to have been put on notice that some reasonable action must need have been taken. The fact that the bartender in Kane was given a verbal warning is not dispositive to the present case, because the assault followed the warning “immediately.” Id.
The fact that a woman allegedly came running out of the trailer immediately after the assault asking “Kevin” if he had “hit him" lends weight to the contention that a jury could find that the persons inside the trailer were aware of the events outside of the trailer. The fact that Mr. Bard heard the second confrontation which happened ten to fifteen feet away from the trailer, lends weight to the contention that a jury might find he also heard, or could have heard, the first confrontation.
Addison v. Green Cafe, Inc., 323 Mass. 620 (1949), where a bartender was not held liable for one of his patrons having pulled out a gun and shot another patron, is not applicable to the current facts. Id. at 621. The central issue in Addison was whether, when a nominal fight breaks out between two patrons, and a third patron, who is entirely unrelated and unconnected to the two patrons who were fighting, pulls out a gun and starts to shoot into a crowd in order to “stop the fight,” the causation between the fight and the gunshot injury was strong enough to hold the landlord liable or not. Id. Without commenting on the landlord’s liabilities for the injuries directly caused by the fight itself, the court held that the act of a person pulling a gun out and firing into a crowded room in order to stop a fight was so outrageous it was, in fact, an “intervening force,” and not a “consequence of any act for which the defendant was liable.” Id. at 622-23.
While the injury must in fact be caused by the defendant’s breach of a duty owed to a plaintiff, Addison does not stand for the proposition that, in this case, if the jury finds that Mr. Bard owed a duty to Mr. Swank to take reasonable steps and did not do so, such a breach would not have been the cause of Mr. Swank’s injury. Id. In Addison, the court basically found that there was no causation between the bar room scuffle, for which the bartender may well have been liable, and the shooting. Id. at 622. In this case, we are talking about the bar room scuffle itself, and not the shooting.
B. Material Questions of Fact.
The defendant contends that he did not hear the first confrontation. The plaintiff has tendered evidence to the effect that, if the defendant admits to having heard the second confrontation, which was, in fact, allegedly farther away from the trailer than the first there is a material question of fact as to what the plaintiff heard with regard to the first confrontation. Dep. of Philip P. Bard, p.23.
When taking into account this allegation, and when remembering the allegation that a woman came running out of the trailer saying “You didn’t hit him did ya? Tell me you didn’t hit him Kevin?”, there is a genuine issue of material fact as to what the people inside the trailer knew about what was taking place outside the trailer, and when they knew it.
The resolution of these issues will has a direct relationship to the determination of whether or not Mr. Bard owed a duty to Mr. Swank, and if he did, whether he breached that duty.
CONCLUSION
Because it is possible, if a jury believed the plaintiffs allegations, that the defendant could be found to have had a duty to the plaintiff, and because there exist genuine issues of material facts to be decided by a jury, the defendant’s motion for summary judgment is denied.
ORDER
For the foregoing reasons, the defendant’s motion for summary judgement is DENIED.