JOHN FOLEY & others[1] vs. BOSTON HOUSING AUTHORITY
& another.[2]

Suffolk. March 8, 1990. - June 13, 1990.

Present: LIACOS, C.J., WILKINS, ABRAMS, LYNCH, & GREANEY, JJ.

*Practice, Civil*, Summary judgment. *Negligence*, Employer, Duty to prevent harm.

In a negligence action, summary judgment was properly granted for the defendants, where the plaintiffs did not demonstrate that the defendants could reasonably have foreseen the risk which resulted in the plaintiffs' injury. [643-646]

CIVIL ACTION commenced in the Superior Court Department on January 26, 1987.

The case was heard by *Charles M. Grabau*, J., on a motion for summary judgment.

The Supreme Judicial Court granted a request for direct appellate review.

*Lawrence K. McCarthy* for the plaintiffs.

*Leonard F. Zandrow, Jr.* (*Richard L. Neumeier & B. Deidre Brennan* with him) for Boston Housing Authority.

*John T. Walsh*, Assistant Corporation Counsel, for the city of Boston.

LIACOS, C.J. The plaintiffs, the wife and children of John J. Foley, Jr. (Foley), appeal from the entry of summary judgment against them. We granted their application for direct appellate review. Foley allegedly was assaulted by a fellow employee in the course of his employment at the defendant Boston Housing Authority's (BHA) D Street housing project in South Boston. The plaintiffs brought this action for

---

[1]Michael Foley and Judith A. Foley.

[2]City of Boston.

loss of spousal and parental consortium resulting from the assault.[3] The plaintiffs allege that the BHA and the city of Boston (city) negligently failed to provide proper security for Foley and negligently failed to train, discipline, or otherwise supervise its employees. We affirm the judgment.

We summarize the facts in the light most favorable to the plaintiffs. See *Yakubowicz* v. *Paramount Pictures Corp.*, 404 Mass. 624, 626 (1989). In 1981, Foley became manager of the D Street housing project in South Boston. After becoming manager, he was subjected to a number of threats and assaults. He claims that on two occasions he was assaulted by employees he supervised, including an incident in 1982 when, at a party off the BHA's premises, an employee who was a boxer punched him in the nose. Foley was threatened on a regular basis by tenants, receiving threats approximately twice a week. He received threatening notes, bullet shells, and telephone calls, and was threatened on different occasions with, variously, a gun, knives, and an attack dog. The tires of his motor vehicle were slashed on several occasions, and sand was put in the gasoline tank. These incidents and threats had all been reported to the BHA, and he was reimbursed for repairs to his automobile.

The threats and other incidents arose out of Foley's duties as manager. After a receiver had been appointed to oversee the BHA, there were increased attempts to control both tenants and employees, with Foley as the principal contact person for the BHA. Every two weeks, Foley would have personal conferences with ten to twelve families slated for eviction, about one-half of which were for violent incidents. Tenants often would demonstrate tremendous anger and outbursts at these conferences. As manager, Foley was also re-

___

[3]Foley received workers' compensation benefits as a result of his injury and is barred from bringing any claim for recovery in this action. The plaintiffs are not barred from pursuing their consortium claims by G. L. c. 152, § 24, because their alleged injuries arose prior to the enactment of St. 1985, c. 572, § 35, which abolished the rights of spouses and children of employees covered by workers' compensation to maintain actions for loss of consortium.

sponsible for carrying out discipline of employees and for implementing automobile towing programs. Both duties subjected him to hostility from residents of the project and employees.

At the D Street housing project there was an interrelationship between the tenants and BHA laborers. Many of the laborers were present or former tenants and had friends and relatives who were tenants. These individuals, who considered themselves members of the South Boston community, saw Foley, who had been born and raised in South Boston, as a traitor to the local community. As such, he was subjected to greater anger and violence than he would have received had he been an outsider. For example, he was told that he would be "dead meat" if he showed his face on Broadway. At Foley's request, the housing project security guard would accompany him on his rounds when Foley left the office. Foley requested the guard's company because, when walking alone, he feared for his life.

The incident which gave rise to this cause of action occurred on May 18, 1984. Tim Ferris, a BHA employee, had received less than full payment in his paycheck, due to Foley's failure to credit Ferris' sick leave on time. In the security guard's presence, Foley was told that Ferris was looking for him and that he was "mad." Foley, who had been asked by a carpenter to attend to a problem concerning a fence, requested that the security guard accompany him to the site, which was one city block from the office, located on BHA property. The guard refused, and Foley went to the site while the guard apparently remained at the office.[4] Foley was at the fence with the carpenter and two laborers for about ten to twenty minutes. Foley was not aware of Ferris's presence during this time. Suddenly, Foley was struck by a "sucker

---

[4] At about the same time, Foley and the security guard received a report that there was a tenant running around with a butcher knife in the hallway of one of the project buildings. It is not clear from the deposition testimony whether the guard refused to accompany Foley because of this ongoing incident.

punch" thrown by Ferris. Foley fell to the ground,. and Ferris said, "That's for my check. That's for my time."

At his deposition, Foley testified that, prior to May 18, 1984, he had never had any arguments with Ferris, had not been threatened by Ferris, and was not afraid of Ferris. Foley also testified that he did not tell the security guard that he thought that his safety was in danger, that he did not know that Ferris presented any danger to him on the day of the incident, that he did not expect the attack by Ferris, and that he had received no warning that Ferris would strike him.

The judge concluded that, while the BHA may have provided Foley with protection against tenants who may become violent because of his position, "nothing in the deposition or affidavits submitted suggest that the BHA had assumed any duty to protect him against *other employees*" (emphasis in original). The judge also concluded that Ferris's attack was unforeseeable. Accordingly, he granted the defendants' motions for summary judgment.

"Rule 56 (c) of the Massachusetts Rules of Civil Procedure, 365 Mass. 824 (1974), provides that a judge shall grant a motion for summary judgment 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' The party moving for summary judgment assumes the burden of affirmatively demonstrating that there is no genuine issue of material fact on every relevant issue, even if he would have no burden on an issue if the case were to go to trial. . . . If the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts which would establish the existence of a genuine issue of material fact in order to defeat a motion for summary judgment." (Citations and footnote omitted.) *Pederson* v. *Time, Inc.*, 404 Mass. 14, 16-17 (1989).

The plaintiffs argue that the defendants may be held liable under either of two theories. First, the plaintiffs argue that

the defendants voluntarily assumed a duty to protect Foley against attacks by third parties. See *Mullins* v. *Pine Manor College*, 389 Mass. 47, 52-53 (1983). Second, the plaintiffs claim that the employer-employee relationship between the BHA and Foley gave rise to a duty to protect Foley against attacks by third parties. Under either theory, in order for liability to be imposed, the plaintiffs are required to prove that Ferris's attack on Foley was foreseeable. As to the first theory, see *id.* at 54-55. As to the second theory, our comments in *Irwin* v. *Ware*, 392 Mass. 745, 756 (1984), are relevant: "While several different categories of . . . special relationships are recognized in the common law, they are based to a large extent on a uniform set of considerations. Foremost among these is whether a defendant reasonably could foresee that he would be expected to take affirmative action to protect the plaintiff and could anticipate harm to the plaintiff from the failure to do so."[5] Given the record before us, it cannot be said that Ferris's attack on Foley was foreseeable.

---

[5] A number of jurisdictions have held that the employer-employee relationship may in certain circumstances give rise to a duty to protect the employees from the criminal acts of third parties. See, e.g., *Lillie* v. *Thompson*, 332 U.S. 459, 462 (1947) (employer has duty to make reasonable provisions against foreseeable danger from intentional or criminal misconduct); *Morgan* v. *Bucks Assocs.*, 428 F. Supp. 546 (E.D. Pa. 1977) (employer may have duty to protect employee against foreseeable criminal acts of third parties); *Circle K Corp.* v. *Rosenthal*, 118 Ariz. 63, 68 (Ct. App. 1977) ("an employer may be liable for mere failure to act to protect his employees from reasonably foreseeable criminal conduct"); *Ozment v. Lance*, 107 Ill. App. 3d 348, 352 (1982) (employer-employee relationship, plus reasonable foreseeability of possible criminal act, may give rise to duty of protection); *Thoni Oil Magic Benzol Gas Stations, Inc.* v. *Johnson*, 488 S.W.2d 355 (Ky. 1972) (in certain unusual circumstances employer may be liable for failure to protect employees against criminal acts of third parties); *Bartlett* v. *Hantover*, 9 Wash. App. 614, 621 (1973) ("[w]here the nature of the work is such that it exposes the employee to the risk of injury from the criminal acts of third persons, a jury question is raised as to whether the employer has been negligent in not foreseeing the risk of criminal acts and acting to protect employees against the danger"). These cases uniformly require that, before liability may attach, the attack must have been at least reasonably foreseeable. Because of our conclusion in this case, we need not decide whether the employer-employee relationship gives rise to duties which the common law might not otherwise impose on individuals.

The plaintiffs argue that the prior threats by tenants, the two alleged previous assaults by employees, and the interrelationship between the tenants and employees made the assault by Ferris foreseeable. While this argument has a good deal of force, we cannot accept the plaintiffs' reasoning. It is true that, where there has been a showing that the risk of a criminal assault is foreseeable, the exact nature and source of the assault need not be shown in order for liability to attach. See *Sharpe* v. *Peter Pan Bus Lines, Inc.*, 401 Mass. 788, 792 (1988); *Irwin* v. *Ware, supra* at 758; *Michnik-Zilberman* v. *Gordon's Liquor, Inc.*, 390 Mass. 6, 13-14 (1983); *Mullins* v. *Pine Manor College, supra* at 55. For example, where there have been repeated criminal acts, in a particular area, which demonstrate that such acts are likely to occur in the future, the defendant need not know the identity and background of the attacker in order to be liable. See *Sharpe* v. *Peter Pan Bus Lines, Inc., supra*; *Mullins* v. *Pine Manor College, supra*.

In this case, it may be said that the BHA could foresee that a *tenant* might attack Foley.[6] The quantity and frequency of threats by tenants and the volatile environment faced by Foley when dealing with eviction cases could be found to have placed the BHA on notice that an attack by a tenant was foreseeable. For example, an attack by the knife-wielding tenant in this case might be said to have been foreseeable. However, it cannot be said that an attack on Foley by a fellow *employee* was foreseeable. There is no showing in the record of threats by employees, or a pattern of incidents involving employees, that reasonably would put the BHA on notice that Foley could be the target of an attack by an employee. The only prior employee assault specifically described in the record occurred two years before the incident in this case, off the premises of the BHA. In addition, Foley testified that, prior to May 18, 1984, he had never had any arguments with Ferris, had not been threatened by Ferris, was

---

[6]This is not to say that the BHA necessarily had a duty to protect Foley against foreseeable attacks by these tenants.

not afraid of Ferris, and, on the day of the incident, did not think Ferris posed a threat to his safety. There is no evidence in the record that the BHA had any knowledge that Ferris might present a risk to Foley. We conclude that the attack by Ferris was outside the scope of the risk of foreseeable harm. "There is no duty owed when the risk which results in the plaintiff's injury is not one which could be reasonably anticipated by the defendant." *Husband* v. *Dubose*, 26 Mass. App. Ct. 667, 669 (1988), quoting *Glick* v. *Prince Italian Foods of Saugus, Inc.*, 25 Mass. App. Ct. 901, 902 (1987).

We are reluctant generally to take an issue of foreseeability away from a jury. However, this is one of the rare cases where it can be said that the harm which occurred was not within the scope of foreseeable risk to the victim. Accordingly, we affirm the judgment of the court below.[7]

*Judgment affirmed.*

---

[7]The city of Boston, about whose role in this case there are almost no facts in the record, cannot be said to have foreseen the assault. At oral argument (but not in the record) there was some reference made to the fact that the city contracted the services of a security guard out to the BHA. There is no indication in the record as to what knowledge the city had of the events in this case, and what role it played in the events preceding the attack.