**Robert THOMALEN and Theresa Thomalen, Plaintiffs,**

**v.**

**MARRIOTT CORPORATION, Christopher Mansfield, Collette Travel Service Inc., Murder by Invitation and Christopher Warren, Defendants.**

**Angelina BELMONT, Plaintiff,**

**v.**

**MARRIOTT CORPORATION and Collette Travel Service Inc., Defendants.**

**Civ. A. No. 90–40140–NMG.**

United States District Court, D. Massachusetts.

March 4, 1994.

**34**

Jared Altman, Seavey, Fingerit, Vogel, Oziel & Skoller, Charles E. Skoller, New York, NY, for Robert and Theresa Thomalen.

Daniel A. Seymour, Servino & Seymour, White Plains, NY, for Angelina Belmont.

Michael S. Appel, Sugarman, Rogers, Barshak & Cohen, Boston, MA, for Marriott Corp.

Christopher Mansfield, pro se.

John J. Finn, Long, Racicot & McTaggart, Boston, MA, for Collette Travel Service, Inc.

John R. Bartels, Jr., Bartels & Feureisen, White Plains, NY, for Murder by Invitation.

Benjamin A. Fleischner, White, Fleischner & Fino, New York, NY, John R. Bartels, Jr., Bartels & Feureisen, White Plains, NY, for Christopher J. Warren.

Peter L. Puciloski, Sugarman, Rogers, Barshak & Cohen, PC, Michael S. Appel, Sugarman, Rogers, Barshak & Cohen, Boston, MA, for State Mut. Life Assur. Co. of America and Marriott Corp.

Alexander Kran, III, Jacobowitz, Spessard, Garfinkel & Lesman, New York, NY, for Collette Travel Service, Inc.

## MEMORANDUM AND ORDER

GORTON, District Judge.

These consolidated actions arise out of an incident that occurred April 29, 1988 at a hotel owned by defendant, Marriott Corporation ("Marriott"), in Westborough, Massachusetts. The plaintiffs, Robert and Theresa Thomalen ("the Thomalens") and Angelina Belmont ("Belmont"), seek to recover from the defendants for burn injuries sustained by Robert Thomalen and Belmont at the hotel when an entertainment act involving fire-eating went awry. The act was performed by defendant, Christopher Mansfield ("Mansfield"). Plaintiff, Theresa Thomalen, seeks to recover for the lost consortium of her husband arising from his burn injuries.

Pending before this Court is Marriott's motion for summary judgment on plaintiffs' claims of negligence and strict liability or, in the alternative, for partial summary judgment on Marriott's cross claim for indemnification by co-defendant Collette Travel Service, Inc. ("Collette").

## I. BACKGROUND

The relevant facts are recited in the light most favorable to the non-moving parties. *O'Connor v. Steeves,* 994 F.2d 905, 907 (1st Cir.1993). On the weekend of April 29, 1988, the Marriott hosted a "Murder Mystery Weekend" tour ("the mystery tour") sponsored by Collette. Under the terms of an agreement between Marriott and Collette ("the Agreement"), Marriott provided accommodations, banquet facilities and meal preparation services to Collette's mystery tour participants. Collette hired Murder by Invitation ("MBI"), an acting troupe that stages and performs "murder mysteries", to entertain its tour participants during the weekend.

On the evening of August 29, 1988, after a dinner provided to mystery tour guests in the Ballroom of the Marriott, defendant Mansfield, a member of the MBI acting troupe, became engulfed in flames while attempting to perform a fire-eating act. Robert Thomalen, a fellow MBI actor, ran to the stage to help Mansfield and, in the process, suffered burns. At some point during Mansfield's struggle to extinguish the flames, he kicked over a can of lighter fluid which spilled across the stage, ignited and caused burns to Belmont, a guest sitting at a table close to the stage.

## II. MARRIOTT'S MOTION FOR SUMMARY JUDGMENT

The Thomalens and Belmont allege that Marriott was negligent in permitting, supervising and maintaining unsafe conditions with respect to the fire-eating act. The Thomalens and Belmont also allege that Marriott is strictly liable for allowing an abnormally dangerous or ultrahazardous activity to occur on its property. Marriott moves for summary judgment arguing that 1) the record evidence cannot sustain a finding that the fire-eating act was a foreseeable event and therefore requires a finding that Marriott was not negligent, and 2) strict liability does not apply to the facts of this case.

The role of summary judgment is to pierce the formal pleadings and evaluate the proof to determine whether there is a genuine need for trial. *Mesnick v. General Elec. Co.,* 950 F.2d 816, 822 (1st Cir.1991), *cert. denied,* — U.S. ——, 112 S.Ct. 2965, 119 L.Ed.2d 586 (1992). The burden is upon the moving party to show, based upon the pleadings, discovery on file and affidavits, that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

If the moving party demonstrates that "there is an absence of evidence to support the non-moving party's case," the burden shifts to the non-moving party to establish the existence of a genuine issue of material fact for trial. *FDIC v. Municipality of Ponce,* 904 F.2d 740, 742 (1st Cir.1990), *quoting Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The nonmovant, however, may not rest upon mere allegation or denial of the pleadings. Fed.R.Civ.P. 56. In considering a motion for summary judgment, the Court must view the entire record in the light most hospitable to the non-moving parties and indulge all reasonable inferences in their favor. *O'Connor,* 994 F.2d at 907.

### A. *Negligence*

■ A federal court, sitting in diversity jurisdiction, must apply the law of the state in which it sits. *Daigle v. Maine Medical Center,* 14 F.3d 684, 688 (1st Cir.1994). In this case, Marriott does not dispute that it owed a duty of reasonable care to Robert Thomalen and Belmont. *See Mounsey v. Ellard,* 363 Mass. 693, 707–708, 297 N.E.2d 43 (1973). Moreover, Marriott's duty extended "to prevent injury by third persons whether their acts were accidental, negligent, or intentional." *Flood v. Southland Corp.,* 416 Mass. 62, 72, 616 N.E.2d 1068 (1993), *quoting Carey v. New Yorker of Worcester, Inc.,* 355 Mass. 450, 452, 245 N.E.2d 420 (1969). Marriott argues, however, that it owed no duty to Robert Thomalen and Belmont in this case because Mansfield's actions were not reasonably foreseeable to Marriott. *See Foley v. Boston Hous. Auth.,* 407 Mass. 640, 646, 555 N.E.2d 234 (1990).

Although plaintiffs have not responded to Marriott's motion for summary judgment, this Court must, nevertheless, make an independent assessment of the evidence and determine whether there is a genuine issue of material fact for trial. More to the point, this Court must construe the evidence in the light most favorable to the plaintiffs and determine whether, under any combination of circumstances, a reasonable jury could draw the inference that Mansfield's actions were reasonably foreseeable to Marriott. *See Mullins,* 389 Mass. at 56, 449 N.E.2d 331, *citing Poirer v. Plymouth,* 374 Mass. 206, 212, 372 N.E.2d 212 (1978). Legitimate inferences, however, must be based on "probabilities rather than possibilities" and must not be the result of "mere speculation and conjecture." *Id., quoting Alhom v. Wareham,* 371 Mass. 621, 627, 358 N.E.2d 788 (1976).

In evaluating Marriott's motion for summary judgment, this Court is mindful of the fact that Massachusetts courts are reluctant to take the question of negligence away from the jury. "Only when no rational view of the evidence warrants a finding that the defendant was negligent may the issue be taken from the jury." *Mullins v. Pine Manor College,* 389 Mass. 47, 56, 449 N.E.2d 331 (1983), *quoting Luz v. Stop & Shop Inc. of Peabody,* 348 Mass. 198, 203–204, 202 N.E.2d 771 (1964).

Marriott provides affidavits—from the general manager of Marriott at the time of

the incident and from the captain of the fire department that investigated the incident— indicating that Marriott was not informed ahead of time that MBI would stage a fire-eating act. The plaintiffs have provided no evidence to the contrary. The issue in this case, however, is not merely whether Marriott, in fact, knew of the fire-eating act prior to its execution, but also whether it should have known about the act. This assessment turns on an evaluation of the totality of the circumstances. *Mounsey*, 363 Mass. at 708–709, 297 N.E.2d 43. Although a close call, given the circumstances, this Court concludes that there is sufficient evidence on the record from which a reasonable jury could infer that Marriott should have known about the fire-eating act.

Robert Thomalen indicated in his deposition that Mansfield had performed the fire-eating act at least once as part of the entertainment for MBI in the year prior to the incident in question. This is not a case, therefore, where someone did something so utterly unexpected and out of character that any attempt to foresee its occurrence would have been futile. *Compare Foley*, 407 Mass. at 645–46, 555 N.E.2d 234 (spontaneous physical attack upon manager of housing project by fellow employee outside the scope of the risk of foreseeable harm).

Moreover, Marriott has provided no evidence that it made any effort (let alone a reasonable effort) to determine what acts MBI planned to perform over the weekend. Marriott is not entitled to escape liability for negligence by putting on blinders and then claiming that Mansfield's actions were not reasonably foreseeable. Based upon the current state of the evidentiary record, a jury could infer that, in the exercise of reasonable care, Marriott should have discovered what acts would be performed on its property. If Marriott had shown that it made such a reasonable effort and still did not learn of the fire-eating act, then perhaps summary judgment on the issue of foreseeability would be appropriate. In the absence of such a showing, however, Marriott's motion for summary judgment on the negligence claim will be denied.

## B. *Strict Liability*

Plaintiffs allege that Marriott is strictly liable for their injuries because Mansfield's fire-eating act constituted an abnormally dangerous activity. Marriott contends, in its motion for summary judgment, that under Massachusetts law a claim of strict liability requires *an escape* of a dangerous activity from the land of the defendant onto the land of another, causing injury or damage. There is no dispute in this case that the entire incident took place on Marriott's property. There was no "escape" of a dangerous instrumentality.

In *The Clark–Aiken Co. v. Cromwell–Wright Co., Inc.*, 367 Mass. 70, 78 n. 7, 323 N.E.2d 876 (1975), Massachusetts explicitly adopted the *Rylands v. Fletcher*, L.R. 1 Ex. 265, 279 (1866), formula of strict liability for ultrahazardous activity. That formula clearly requires an "escape" of the dangerous activity from defendant's property onto that of another. *Id.* at 74–75, 323 N.E.2d 876.

The question for this Court is whether the escape requirement for imposition of strict liability, as announced in *Clark–Aiken*, remains the law of Massachusetts. At least one federal court in this district has implied that it is not. In *Wellesley Hills Realty Trust v. Mobil Oil Corporation*, 747 F.Supp. 93 (D.Mass.1990), the Court stated:

> The original articulation of the rule in *Rylands* anticipated that such harm would be caused by the 'escape' of the danger from the actor's land. Of course, as the rule developed, courts applied it to situations which did not involve an 'escape' from the land. For example, an individual who conducts an abnormally dangerous activity will be strictly liable to persons who come on the land for injury to their person.

*Id.* at 102. Nevertheless, this Court's duty is to determine the current state of the law in Massachusetts. The most direct evidence of that comes from the Massachusetts Supreme Judicial Court ("the SJC").

In *Clark–Aiken*, the SJC stated that *Delano v. Mother's Super Mkt. Inc.*, 340 Mass. 293, 163 N.E.2d 920 (1960), was not a strict liability case because the plaintiff in that case fell on ice *on defendant's property*. There-

fore, the SJC stated, "[t]here was no escape onto property of another which would bring that case within the *Rylands* doctrine." *Clark–Aikens*, 367 Mass. at 78 n. 7, 323 N.E.2d 876. This Court has found no cases in which the SJC has modified or rejected that general statement of the law.

This Court therefore concludes that a Massachusetts court would not allow a claim of strict liability in this case where there was no escape of a dangerous instrumentality from Marriott's property. Marriott's motion for summary judgment on the claim of strict liability therefore will be allowed.

### III. MARRIOTT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

■ Marriott maintains that it is entitled to partial summary judgment on its cross claim for indemnity against co-defendant Collette based on an indemnity clause contained in the Agreement. That clause states that:

> Group [Collette] assumes responsibility for any claims for loss or damage to itself or its exhibitors displays or equipment in the [Marriott] hotel. Group shall also indemnify and hold the hotel harmless for any injury to persons or damage to property except claims due to the hotel's gross negligence.

In response, Collette argues, first, that the indemnification clause is unenforceable because, under Massachusetts law, no lease or rental agreement may relieve a landlord of liability for injuries caused by the landlord's negligence. M.G.L. c. 186, § 15. Collette contends that Section 15 applies because "[i]n exchange for a price, the landlord (Marriott) agreed to provide guest rooms and function rooms to the tenant (Collette)."

Collette's argument stretches the statute too far. The central purpose of the arrangement between Marriott and Collette was to provide lodging and entertainment to Collette's tour guests at the Marriott. While Marriott might appropriately be termed a landlord, Collette is not a tenant. The guests staying at the Marriott are tenants, Collette is a travel service that merely acted as a facilitator in making the booking arrangements for its tour participants.

Section 15 applies to traditional landlord/tenant agreements, which the Agreement demonstrably was not. *Cf. Minassian v. Ogden Suffolk Downs, Inc.*, 400 Mass. 490, 493, 509 N.E.2d 1190 (1987) (agreement to use stall space and race track not a rental agreement within the meaning of section 15). The Agreement is not a rental agreement within the meaning of section 15 and therefore the indemnification clause is enforceable.

■ Collette's second argument concerns construction of the indemnity clause. In Massachusetts, indemnity clauses are "fairly and reasonably construed in order to ascertain the intention of the parties and to effectuate the purpose sought to be accomplished." *Cohen v. Steve's Franchise Co., Inc.*, 927 F.2d 26, 28 (1st Cir.1991), *citing Shea v. Bay State Gas Co.*, 383 Mass. 218, 418 N.E.2d 597 (1981). Collette contends that a fair and reasonable construction of the indemnity clause is that the parties intended that Collette would indemnify Marriott only under circumstances where Collette had control over the circumstances underlying the accident. This Court agrees.

Marriott and Collette agreed to place the burden of obtaining liability insurance upon Collette, presumably because Collette was in the best position to notice and rectify potential hazards stemming from the mystery tour. However, one of plaintiffs' allegations is that Marriott was negligent because of a failure of its fire sprinkler system. Because Marriott is uniquely positioned to notice and control the hotel's sprinkler system, this Court believes that a Massachusetts court would conclude that the parties did not intend to indemnify Marriott for liability caused by a failure of its sprinkler system.

Marriott's motion for partial summary judgment on its cross claim for indemnification therefore will be denied insofar as Marriott may be liable to the plaintiffs for negligence arising from a failure of its fire sprinkler system. Marriott's motion for partial summary judgment will be allowed with respect to liability arising from any negligence other than that alleged with respect to its fire sprinkler system.

So Ordered.