Cowin, J.
In this case, Stanley Howard (“Howard”), a patient receiving psychiatric care at the New England Deaconess Hospital (“hospital”), escaped from the hospital and jumped from a building to commit suicide. While jumping from the building, Howard injured the plaintiff, John Carr (“Carr”). Carr brought this negligence action against Howard’s treating psychiatrist, Kerry Bloomingdale, M.D. (“Dr. Bloomingdale”).[2] The defendant, Dr. Bloomingdale, moves for summary judgment pursuant to Mass.R.Civ.P. 56 on all counts of the complaint on the ground that she owed no duly of care to protect the plaintiff from the conduct of her patient. Doctor Bloomingdale also moves for partial summary judgment on Count III of the cross-claim seeking contribution by the estate. By means of the same motion, the third-party defendant, New England Deaconess Hospital, seeks partial summary judgment on Count IV of the third-party claim for contribution asserted against it by the estate. For the reasons set forth below, the defendants’ motion for summary judgment is DENIED.
BACKGROUND
The following facts are taken from the submissions of the parties. On this summary judgment motion, all inferences are drawn in favor of the plaintiffs. On July 14, 1993, Stanley Howard, 52, was admitted to New England Deaconess Hospital for psychiatric treatment for depression and suicidal and homicidal ideation. Howard’s Initial Treatment Plan (“the Plan”), dated July 14, 1993, the date of his admission, states that he was a danger to himself, had homicidal and suicidal ideation, and that he was an escape risk. The Plan also states that Howard should be closely watched. Howard was admitted involuntarily[3] and placed on a suicide watch in the hospital’s locked psychiatric ward. His treating psychiatrist at the hospital was the defendant, Dr. Kerry Bloomingdale.
Various hospital staff members noted in medical records that Howard was angry about his commitment. On July 15, Howard escaped the ward for one hour and fifteen minutes.
On July 22, 1993, Howard was transported from the psychiatric ward to another building at the hospital for an MRI test. The order for his transportation required a staff person to escort Howard one-on-one.[4] After undergoing the MRI test, Howard escaped from his escort, Sheila Bruce, a mental health aid, and went to the upper level of the hospital’s parking garage to jump to his death.
At approximately 11:55 a.m., the plaintiff, John Carr, was landscaping the hospital grounds. Carr’s attention was drawn to persons shouting and looking at the upper level of the parking garage. The plaintiff, a co-worker, and a hospital security guard began to set up a tarp to catch Howard. A security guard warned them to stand back but did not prevent them from spreading out the tarp. Before the tarp was in place, however, Howard jumped to his death, landing on and seriously injuring the plaintiff.
Plaintiff brought this action in negligence against Marjorie Howard, the administratrix of Howard’s estate, and against Dr. Bloomingdale, the psychiatrist responsible for the care, treatment and protection of Howard. Cross-claims were also filed as detailed above. Specifically, the plaintiff alleges that his injuries were a direct and proximate result of Dr. Bloomingdale’s negligent failure to take special precautions in the transportation of Howard, such as ensuring that Howard was escorted by a person competent to provide him protective measures. Dr. Bloomingdale and the hospital move for summary judgment, arguing that, as a matter of law, they owed no duty to protect the plaintiff from the conduct of Howard.
DISCUSSION
Summary judgment shall be granted if the papers filed establish that there are no genuine issues as to any material fact in dispute and that the moving party is entitled to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983). Mass.R.Civ.P. 56(c). The judge must consider the evidence presented in the light most favorable to the nonmoving party. Connecticut Nat’l Bank of Hart *64 ford v. Kommit, 31 Mass. 348, 353 (1991); Parent v. Stone & Webster Eng’g Corp., 408 Mass. 108, 113 (1990).
For purposes of this motion, the crux of Carr’s claim and the estate’s claims is that Dr. Bloomingdale and the hospital were negligent in failing to provide additional security measures to prevent Howard’s escape from his attendant and his jump from the garage roof.[5] (The estate’s claims at issue in this motion are ones for contribution.) Dr. Bloomingdale and the hospital contend that they owed no duty to the plaintiff because (1) no special relationship existed between Dr. Bloomingdale and the plaintiff to warrant imposition of a duty of care; (2) a psychiatrist owes no duty to members of the general public to control the conduct of his or her patients; (3) Howard’s conduct and the resulting injury to the plaintiff were not reasonably foreseeable events giving rise to a duty of care; and (4) even if Dr. Bloomingdale owed a duty to the general public, such a rule is inapplicable here because Carr’s voluntary acts relating to Howard’s conduct rendered Carr’s negligence greater, as a matter of law, than any negligence of the defendants.
This case initially raises an issue concerning the applicability of G.L.c. 123. §36A. Said statute, enacted in 1989 as part of an act entitled “Mental Health Care Professionals — Patient Violence,” provides in pertinent part as follows:
(1) There shall be no duty owed by a licensed mental health professional to take reasonable precautions to warn or in any other way protect a potential victim or victims of said professional’s patient, and no cause of action imposed against a licensed mental health professional for failure to warn or in any other way protect a potential victim or victims of such professional’s patient unless: (a) the patient has communicated to the licensed mental health professional an explicit threat to kill or inflict serious bodily injury upon a reasonably identified victim or victims and the patient has the apparent intent and ability to carry out the threat, and the licensed mental health professional fails to take reasonable precautions as that term is defined in section one; or (b) the patient has a history of physical violence which is known to the licensed mental health professional and the licensed mental health professional has a reasonable basis to believe that there is a clear and present danger that the patient will attempt to kill or inflict serious bodily injury against a reasonably identified victim or victims and the licensed mental health professional fails to take reasonable precautions as that term is defined by said section one. Nothing in this paragraph shall be construed to require a mental health professional to take any action which, in the exercise of reasonable professional judgment, would endanger such mental health professional or increase the danger to potential victim or victims.
The specific question is whether this statute applies to bar any action against Dr. Bloomingdale and/or the New England Deaconess Hospital.
A licensed mental health professional is defined under G.L.c. 123, as “any person who holds himself out to the general public as one providing mental health services and who is required pursuant to such practice to obtain a license from the commonwealth.” G.L.c. 123, §1. There is no question that Dr. Bloomingdale is a licensed mental health professional under the statute. It is unclear, however, whether the hospital is encompassed by that term. It is not necessary in this case to resolve whether the hospital is a licensed mental health professional, given this Court’s conclusion regarding the applicability of the statute.
The statute insulates licensed mental health professionals from failure to warn or protect potential victims of their patient’s conduct unless a) a patient has communicated explicit threats of harm to a reasonably identified victim and has the apparent intent and ability to cariy out the threat or b) a patient with a known history of physical violence presents a clear and present danger to a reasonably identified victim and, in either case, the professional fails to take reasonable precautions.
Although at first blush the statute may appear to insulate Dr. Bloomingdale from liability, a more careful reading of its terms indicates that the statute simply is not intended to apply to the facts of this case. According to the facts presented, there is no reasonably identified victim about whom the patient (Carr) had communicated a threat nor is there any reasonably identified victim to whom the patient presented a clear and present danger.[6]
Further, the Act is titled as one “clarifying the duty of licensed mental health professionals to take precautions against patient violence.” Mr. Carr’s act of committing suicide was not one of violence, except as to himself. Although the title of a statute is not part of the law, it may be used as a guide in resolving an ambiguity in the legislation. Breault v. Ford Motor Company, 364 Mass. 352, 353-54, n.2 (1973).
Thus, it appears to this Court that this statute is simply not intended to encompass the present circumstances. Accordingly, it is necessary to resort to the common law as it exists apart from the passage of this statute.
Massachusetts courts have not determined whether a psychiatrist’s duty of care extends to protect third parties harmed by a patient. Under the common law, a person had no duty to prevent a third party from causing injury to another. Many courts, however, have recognized an exception to this general rule. Under this exception, a person (here, the psychiatrist) has a duty to control the conduct of a third person (here, the patient) to prevent physical harm to another (here, the plaintiff) if (a) a special relation exists between the actor (the psychiatrist) and the third person (patient) *65 which imposes a duly upon the actor to control the third person’s conduct, or (b) a special relation exists between the actor and the third party which gives the third party a right to protection. Restatement (Second) of Torts, §315 (1965). See Lipari v. Sears Roebuck & Co., 497 F.Supp. 185, 194 (D.Neb. 1980).
Massachusetts courts have determined that such a special relation exists, creating a duty of care, when the defendant reasonably could foresee that he or she would be expected to take affirmative action to protect the plaintiff and could anticipate harm to the plaintiff from the failure to do so. Such special relationships have been recognized between a student and a college (Mullins v. Pine Manor College, 389 Mass. 47, 52-53 (1983)); a passenger and a common carrier (Sharpe v. Peter Pan Bus Lines, Inc., 401 Mass. 788, 792-93 (1988)); patrons and commercial eating and drinking establishments (Kane v. Fields Corner Grill, Inc., 341 Mass. 640 (1961)); and guests and hotels (Addis v. Steele, 38 Mass.App.Ct. 433, 436 (1995); Fund v. Hotel Lenox of Boston, Inc., 418 Mass. 191, 193 (1994)).[7]
Defendants’ position is that Massachusetts law to date does not support the proposition that a potential victim of an intentional or negligent act of a patient has a special relationship with the treating doctor and hospital sufficient to impose a duty of care. Although no reported Massachusetts case specifically considers the relationship in this case,[8] the Restatement (Second) of Torts §319 (1965), is relevant. Said section provides:
One who takes charge of a third person whom he knows or should know to be likely to cause bodily harm to others if not controlled is under a duty to exercise reasonable care to control the third person to prevent him from doing such harm.
Illustration 2 under Section 319 describes the situation in this case:
A operates a private sanitarium for the insane. Through the negligence of the guards employed by A, B, a homicidal maniac, is permitted to escape. B attacks and causes harm to C. A is subject to liability to C.[9]
Thus, this section describes an exception to the general rule of non-liability for the conduct of others. Buchler v. Oregon Correctional Div., 316 Or. 499, 505 (1993).
This concept has been applied in a number of cases in other jurisdictions. See, for example, White v. United States, 780 F.2d 97, 103 (D.C. Cir. 1986) (where committed mental patient known to have dangerous propensities escaped and attacked his wife, clearly erroneous to find hospital not negligent in failing to supervise, as it had duty to public to exercise reasonable care to control patients in its custody); Tamsen v. Weber, 166 Ariz. 364 (1990) (under §319, psychiatrist may be liable to stranger attacked by escaped inpatient; where psychiatrist knew or should have known of patient’s dangerous propensities, psychiatrist had duty to act with due care to protect others by controlling patient); Estate of Mathes v. Ireland, 419 N.E.2d 782 (Ind.App., 1981) (husband’s wrongful death action against psychiatric centers which allegedly treated his wife’s killer stated cause of action where complaint alleged centers had actually taken charge of killer, had actual knowledge killer was extremely dangerous and that staff were negligent in releasing killer without extended treatment).
Treatises in other jurisdictions have concluded that “there now seems to be sufficient authority to support the conclusion that by entering the doctor-patient relationship the therapist becomes sufficiently involved to assume some responsibility for the safety, not only of the patient himself, but also of any third person whom the doctor knows to be threatened by the patient.”[10] Fleming and Maximov, The Patient or his Victim: The Therapist’s Dilemma (1974) 62 Cal. L. Rev. 1025, 1030.
Accordingly, this Court believes that the Supreme Judicial Court would conclude, in accord with the Restatement, that a psychiatrist and a hospital that have custody over dangerous persons have an affirmative duty to members of the public to take reasonable precautions to control their patients. The relationship giving rise to this duty may be found either in that existing between the therapist (and hospital) and the patient or in the therapist’s (and hospital’s) obligation to protect the welfare of the community. Lipari v. Sears Roebuck & Co., supra, at 190. The difficulty in predicting dangerousness does not negate the existence of a cause of action for the negligence of the psychiatrist and the hospital. This duty arises only when, in accordance with the standards of the profession, a psychiatrist (or hospital) knows or should know that the patient’s dangerous propensities present an unreasonable risk of harm to others. The duty requires that the caregiver initiate whatever precautions are reasonably necessary to protect potential victims of the patient. To that end, a psychiatrist may have a duty to control, to some appropriate degree, the actions of the patient. Naidu v. Laird 539 A. 2d 1064, 1072-73 (Del.Sup.Ct. 1988).
Imposing a duty to exercise reasonable care to protect third persons is not futile simply because of the difficulties of predicting future acts of violence by a patient. The role of the psychiatrist is similar to that of the physician who must conform to the standards of the profession and must often make diagnoses and predictions based upon evaluations. Thus, the psychiatrist’s judgment in diagnosing emotional disorders and predicting whether a patient is a serious danger is comparable to the judgment doctors regularly give under accepted rules of responsibility. The difficulty in predicting whether a patient is a serious danger is recognized by judging the psychiatrist’s performance by the standard employed for physicians. *66 The psychiatrist is bound only to exercise the degree of care and skill of the average psychiatrist at the time the services were rendered. The psychiatrist may exercise his or her own best judgment without liability as long as it is within the broad range of reasonable practice and treatment. See Tarasoff v. Regents of the University of California, 131 Cal. Rptr. 14, 20-25 (1976). Unless people injured by the hospital’s and/or the psychiatrist’s failure to perform their functions properly can recover, “society’s ability to insure that [the hospital and doctor] conscientiously [perform their] duties is rendered haphazard at best.” Hicks v. United States, (Tamm, J. and McGowan, J., concurring), 511 F.2d 407, 422 (D.C. Cir. 1975).
Here, there is no question that the defendants predicted that Howard was a serious danger. (See the “Initial Treatment Plan” which indicates that Howard was a danger to himself, had homicidal and suicidal ideation, was an escape risk, and was to be watched closely.)[11]
The defendants argue that even were the Massachusetts courts to adopt the duty of care reasoning set forth above, such a rule would be limited to identified or reasonably foreseeable victims of the patient’s dangerous conduct. This Court agrees. The defendants contend further, however, that as a matter of law, Carr was not a reasonably foreseeable victim of Howard’s actions. For this proposition, the defendants rely on Foley v. Boston Housing Authority, 407 Mass. 640 (1990).
In Foley, the plaintiff, an employee of the defendant Boston Housing Authority (“BHA”), while in the course of performing his duties, was attacked by another BHA employee. The plaintiff predicated the liability of the BHA on prior threats by tenants of the BHA and the volatile situation between BHA employees and tenants. The Court held that the BHA owed no duty to protect the plaintiff from another BHA employee. The Court said that the BHA could foresee that a tenant might attack Foley, given the volatility of the BHA-tenant situation; an attack on Foley by another BHA employee was not foreseeable. There was nothing in the record of threats by employees to reasonably put the BHA on notice that Foley could be the target of an employee’s attack.
By contrast, in the instant case, it cannot be said as a matter of law that the plaintiff, working on the hospital grounds near the parking garage where the patient was being transported, was not a reasonably foreseeable victim of an escape or suicide attempt by Howard. There is a distinction between the relationship of an employer-employee (the Foley case) and that of a psychiatrist/hospital and its patient. The employer is not ordinarily concerned about violence perpetrated by employees against each other. Psychiatrists and hospitals, by contrast, who are charged with controlling dangerous patients, must constantly be on notice to protect others who might be harmed.[12]
This Court believes that the Supreme Judicial Court would conclude that the present case is more closely akin to the situation in Irwin v. Ware, 392 Mass. 745 (1984), than that in Foley. In Irwin v. Ware, the Supreme Judicial Court imposed a duty on a police officer to remove from the road a motorist whom the officer knew to be intoxicated and who was an immediate and foreseeable risk of harm to the travelling public. In that situation, the Court held that the police officer was expected to take affirmative action to protect the plaintiff, another motorist, and that the officer could anticipate harm to the plaintiff from failing to take such affirmative action. In the instant case, given Howard’s history and the facts known to the defendants, it cannot be said as a matter of law that the defendants should not reasonably foresee that the negligent performance of their function may result in injury to a third person in Carr’s position. Prosser and Keeton, The Law of Torts §33, at 202-03 (5th ed. 1984).
There need not be a requirement that the defendant be able to predict the precise type of injury the patient perpetrates on the plaintiff. That would require clairvoyance. See Buchler v. Oregon Corrections Div., supra, at 800 (required showing for summary judgment purposes is whether reasonable juror could determine prisoner was likely to cause bodily harm to others; summary judgment affirmed because no reasonable juror could infer that felon, with only a history of drug abuse and “violent temper” in childhood, was likely to cause bodily harm to others two days after his escape). All that is necessary is that the defendant reasonably be on notice that the public or certain portions thereof is in danger from the patient unless reasonable precautions are taken. If reasonable precautions are not taken, and the patient injures one in Carr’s position, that is within the scope of foreseeable risk. The plaintiff need not prove that defendants knew of Carr’s identity or the precise lype of injury involved.
Howard had been diagnosed as a danger to himself and having homicidal and suicidal ideation. He also had previously escaped from the hospital’s psychiatric ward and was angry about his commitment. These factors warranted extreme caution by those controlling Howard when he was transported to and from the MRI testing. It is at least a factual question whether Dr. Bloomingdale and the hospital could reasonably have foreseen that some precautions were neces-sary[13] to ensure the safely of not only Howard, but others whom Howard might injure. The assignment of a sole escort to Howard may well have been insufficient to protect him from escaping and attempting suicide. Carr was working on the hospital grounds, clearly within the danger zone of one who is a suicidal, homicidal escape risk.[14]
Given this Court’s view of the law, that the relationship in the present case creates legal responsibilities *67 on the psychiatrist and hospital, I cannot say that on the facts alleged a juiy would not be warranted in finding negligence on this record. Accordingly, summary judgment is inappropriate.
ORDER
For the foregoing reasons, it is hereby ORDERED that the defendants’ motion for summary judgment be DENIED.

The plaintiff also brought a negligence claim against the Administratrix of Howard’s estate, Marjorie Howard. Marjorie Howard brought a third party complaint against New England Deaconess Hospital and a cross-claim against Dr. Bloomingdale under the Wrongful Death Statute, G.L.c. 229, §2, and seeks contribution against them for any judgment she may be required to pay the plaintiff.

The hospital records, including the admissions evaluation and Howard’s treatment plan, indicate that Howard was admitted involuntarily. The Progress Note dated July 18, 1993 in Howard’s medical records states that Howard signed a Conditional Voluntary form. No such form, however, appears in his medical records. The defendants concede, for purposes of the motion for summary judgment, that the degree of control of the psychiatrist and of the hospital over Howard was equivalent to that over an involuntarily committed patient.

There is evidence that assigning a single person as his escort was inadequate. (See deposition of Shiela Bruce, the escort, at 136-37.)

The estate also claims negligence in the psychiatric treatment of Howard.

In addition, since the patient was already confined, he did not have the ability to carry out a threat to anyone outside the hospital, even had such a threat been uttered, which it had not.

To be foreseeable harm, there is no requirement that the injured party be identified. See Irwin v. Ware, 392 Mass. at 756 (defendant could reasonably foresee he would be expected to take affirmative action to protect plaintiff and could reasonably anticipate harm to the plaintiff for failure to do so). See also discussion of Irwin v. Ware, infra.

This Court does not consider whether there may be a distinction between the duty owed by the hospital and that owed by Dr. Bloomingdale. Defendants’ brief appears to equate the two. There is no reason at this point for the Court to do otherwise.

There is no discussion in this section of any relationship between B, the inmate, and C, the victim. See, however, discussion on foreseeability, infra.

See infra regarding the foreseeability of the third person.

It is noted that in most of the reported cases in which courts have held that liability has been imposed, the patient was “extremely dangerous" and had a long history of dangerous acts. See, for example, Tamsen v. Weber, 802 P.2d 1063, 1065 (Ariz. App. 1990), and Williams v. United States, 450 F.Supp. 1040, 1041-42 (D.Ct. S.D. 1978). The present record clearly presents evidence that Howard was considered a danger.

Cases in many other jurisdictions permit liability to be imposed in the psychiatrist-patient area only when the plaintiff is a specific identifiable victim of the patient’s condition. See, for example, Thompson v. County of Alameda, 614 P.2d 728, 738 (Calif. 1980). This is not always the case, however. Some courts have not required as a precondition to recovery that plaintiff be an identifiable victim of the patient's condition. These courts appear to have required only that the doctor reasonably foresee that the risk engendered by his patient’s condition would endanger other persons. See, for example, Estate of Mathes v. Ireland, supra (hospital could be held liable for releasing patient who hospital knew to be extremely dangerous when patient abducted a stranger from a laundromat and drowned her); and Lipari v. Sears, Roebuck & Co., supra, at 193-95. Some courts even seem to hold that a psychiatrist’s duty of care extends to the public at large. See, for example, Naidu v. Laird, supra; Durflinger v. Artiles, 234 Kan. 484, 493-99 (1983). At least one jurisdiction has rejected a psychiatrist’s duty to the public at large, without stating a position about a duty to those occupying the middle ground. Sherrill v. Wilson, 653 S.W.2d 661, 667 (Mo. 1983).

It is noteworthy here that Howard was transported by a sole escort who conceded that she could not physically control him at all. See note 4, supra.

Whether Carr acted to place himself in the zone of danger, see G.L.c. 231, §85, is a fact question for the jury.