Wilkins, Douglas H., J.
Based on the tragic events leading to her father’s death on June 28, 2006, the plaintiff, Jamie E. Anderson, has brought this negligence and wrongful death action. The defendants are the landlord, 124 Green Street LLC, and the property manager, Andrew B. Perkins, who leased separate apartments to the decedent, James R. Anderson, and the perpetrator, JF.[1] The complaint alleges that JF’s lengthy criminal past and heroin addiction imposed a duly upon the defendants not to lease to JF and not to employ him as an occasional groundskeeper.[2] The defendants have moved for summary judgment, denying that they owed a duty in tort to the plaintiff, because it was not reasonably foreseeable that JF would beat his acquaintance and cotenant during a fight over a personal matter not involving the defendants. After oral argument, review of the summary judgment record and analysis of the governing case law, the defendants’ motion is GRANTED.
BACKGROUND
The parties’ Rule 9A(b)(5) filings and supporting affidavits and documents establish the following undisputed facts, considered in the light most favorable to the plaintiff as opposing party.
The plaintiff is Jamie E. Anderson, individually and as Administratrix of the Estate of James R. Anderson. The defendant, 124 Green Street LLC, owns the premises at 124 Green Street, Lynn, Massachusetts, having purchased the property in September 2001. The property consists of thirty residential apartment units. The defendant, Andrew Perkins d/b/a/ Perkins Properties Realty Management, managed the property at 124 Green Street at all relevant times.
Perkins characterized Lynn as a “working class city” and acknowledged that criminal activity happens at “these properties” all the time. He assumed that some of his tenants have had issues with law enforcement. He was aware that in June 2005 a tenant at 124 Green Street fired a gun and caused the death of a person on a floor above. He did not increase security measures at the property after the incident, believing that the building was secure.
JF became a tenant at 124 Green Street pursuant to a lease that began on December 1, 2004, for a rent of $850.00 per month. Perkins also hired him as a maintenance worker under Perkins’ sole supervision. JF’s work included shoveling snow and moving furniture into unoccupied apartments, but not painting and other tasks that Perkins deemed to be beyond JF’s capabilities. JF received no reduction in rent due to his independent contractor status.
JF socialized with Mr. Perkins’ family prior to the incident in question. Indeed, the record shows that Mr. Perkins allowed JF to help Mrs. Perkins look after the Perkins’ own children and to help with the children’s birthday parties.
The defendants did not perform a criminal background check before hiring JF, because the groundskeeper position did not involve significant responsibility. Nor did Perkins require an employment application, although he did check JF’s references and work history. Similarly, before renting to JF, Perkins did no criminal background check and may not have performed a credit check, because JF was on Supplemental Security Income (SSI) and therefore could cover the rent. In general, Perkins may have foregone his normal rental procedures with JF, as he did with other tenants whom he already knew. He used the National Tenant Network to select tenants, but did not avail himself of that network’s capacity to perform criminal background checks. Perkins routinely did not obtain criminal background checks on tenants, because he thought it was too expensive.
In fact, JF does have a long criminal histoiy. The plaintiff stresses six charges against JF. It appears from the summary judgment record that all of these charges were dismissed, with the possible exception of the proceedings in the 1980s (as to which the record is not clear). There is serious doubt whether the defendants could have discovered such charges in a background check—there are restrictions upon dissemination of information to housing agencies of information regarding charges that are neither pending nor resolved by a conviction (803 C.M.R. 5.03)—but neither party addresses the issue and I assume for *120 sake of this motion that the defendants could have discovered such information through a background check. Other charges against JF involve different crimes and alleged crimes.
JF told Perkins that he had a juvenile criminal background and that he had some issues with the law. Perkins knew of JF’s heroin addiction and assisted JF regarding recovery from substance abuse issues. He took JF to a methadone clinic on numerous occasions and lent him money to pay for the methadone treatment. He was aware that JF had “fallen off the wagon” and had struggled with substance abuse problems for most of his life. Perkins was not aware of these problems at the time he hired JF, but he continued to employ him after he found out. He also helped JF with his personal finances. Perkins was not aware of any altercations or problems that JF may have had with tenants prior to the incident. He had not received complaints about JF from other tenants. He was aware that JF would fight with his girlfriend and write “bad words about her” around town.
As a tenant, JF received from Perkins a key to the main door of the apartment building and a key to his own apartment unit. All tenants received keys to the main door. Perkins did not provide JF with keys to apartments of other tenants or to non-common areas. Mr. Anderson and JF were friends prior to the altercation and socialized together, as they were two single men living in the same building.
The incident in question occurred on June 28, 2006, when JF and Anderson got into an argument because JF had borrowed Mr. Anderson’s company vehicle and ran out of gas. In an attempt to diffuse the fight, Anderson returned to his apartment and shut the door behind him. Without Anderson’s permission, JF then entered Anderson’s apartment where the verbal dispute escalated into a physical altercation. The fight then moved into the apartment complex’s hallway, where most of the fighting occurred. JF hit Anderson repeatedly in the face and stomach as Anderson lay on the floor. While Anderson was on the ground and not moving, JF gave Anderson one more kick to the ribs before fleeing. When the police arrived, Anderson was conscious and coherent and made statements to the officers regarding the fight.
The plaintiff has introduced an affidavit of William B. Connors, Jr., who performs background investigations and is familiar with the use of background investigations by, among others, landlords. He asserts that, by rule and statute, landlords must perform background investigations for all tenants who receive government rent subsidies. According to him, all housing communities receiving government subsidies perform such investigations and automatically disqualify certain tenants, including those with a record of drug crimes and crimes against a person. He also asserts that it is common practice to perform background investigations for tenants not receiving government rental assistance, particularly if the individual’s duties include a right of access to other people’s housing units. The fee for a CORI check is twenty-five dollars ($25.00) per record request. Mr. Connors opines that 124 Green Street, LLC and Perkins had a duty to perform background investigations, but breached that duty.
DISCUSSION
On summary judgment, the defendant has the burden to demonstrate that there is no genuine issue as to any material fact and that it is entitled to a judgment as a matter of law. Foley v. Boston Hous. Auth., 407 Mass. 640, 643 (1990). A defendant may meet this burden by showing that the plaintiff has no reasonable expectation of producing evidence on a necessary element of her case. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). Once the defendant meets the burden, the plaintiff must advance specific facts which establish a genuine dispute of material fact. Id.
The sole issue on summary judgment in this case is whether the defendants owed a duty in tort to take steps to prevent the fight that led to Mr. Anderson’s death. Unless the defendant owed a legal duty to the plaintiff, there can be no liability for negligence. Davis v. Westwood Group, 420 Mass. 739, 742-43 (1995). “Whether a defendant has a duty of care to the plaintiff in the circumstances is a question of law for the court, to be determined by reference to existing social values and customs and appropriate social policy.” O’Sullivan v. Shaw, 431 Mass. 201, 203 (2000). At the same time, “(e]ach element of the tort presents itself normally as an issue of fact; there is proper reluctance to withdraw the issue from the juiy ...” Or v. Edwards, 62 Mass.App.Ct. 475, 490 (2004), citing Foley, 407 Mass. at 646.[3] jn this case, the question of duly arises on undisputed facts.
The parties cite the two leading Massachusetts authorities: Or and Whittaker v. Saraceno, 418 Mass. 196 (1994). While these cases provide the analytical framework, neither squarely answers the question posed here.[4] In Or, 62 Mass.App.Ct. at 480-83, the landlord of a residential property entrusted apartment keys to an individual known to have had a criminal past, which, along with other facts, placed the landlord on notice that further inquiry was needed. The landlord failed to inquire further and was found liable for negligence and wrongful death when the individual raped and killed a young girl residing in the building arid used a vacant, locked apartment to conceal his crime. Id. at 488, 491. In Whittaker, 418 Mass. at 200, an owner of a commercial property was found not liable, because it was not on notice of facts making foreseeable a violent crime against a person lawfully in one of its buildings. The case noted that a residential landlord has a higher duty than a commercial landlord to protect tenants from reasonably foreseeable risks of harm, including foreseeable risks of criminal acts. *121 Id. at 197. This case involves neither entrusting of apartment keys[5] nor a commercial property. It does, however, turn on the same concepts of foreseeability and risk discussed in Whittaker and Or.
The duty “issue becomes more difficult” here because this is not a case where “the killer definitely was an intruder, one against whom reasonable security precautions were intended to act as a deterrent.” See Fund v. Hotel Lenox of Boston, Inc., 418 Mass. 191, 194 (1994). Neither party cites a case discussing a landowner’s liability for the criminal acts of a tenant lawfully present on the property, based upon the failure to conduct a criminal background check of that tenant. Nor has the Court found any such case in Massachusetts. Cases in other jurisdictions discuss some analogous fact patterns, but ultimately do not answer the question either. A duty to evict or to refuse rental may arise where the landlord knows of a specific threat that one tenant poses to another or where there is a history of violence by one tenant against other tenants.[6] This principle does not appear to extend to impose liability for failure to conduct a criminal background check that might disclose past violent crimes, in the absence of any threat directed against tenants or a specific person. Cf. Gibbs v. Diamond, 256 A.D.2d 266, 267, 682 N.Y.S.2d 181, 183 (N.Y.App.Div. 1998) (Even if a landlord has actual or constructive notice of a tenant’s criminal history, a landlord is under no duty to safeguard a tenant against attack by another tenant “since it cannot be said that the landlord had the ability or a reasonable opportunity to control [the assailant]” (dicta; internal quotation marks and citations omitted)). It appears that the plaintiffs theory would impose a new duty upon landlords. That is not reason to reject it, but does call for careful analysis.
Foley, 407 Mass. at 644-46, illustrates some of the limits of the common-law duty. Mr. Foley worked for the Boston Housing Authority as manager of the D Street housing project, which subjected him to regular threats from tenants and BHA laborers. The BHA provided him protection against tenants who might become violent because of his position, but did not assume any duty to protect him against other employees. During a dispute over a paycheck, Tim Ferris, a BHA employee, assaulted and punched Foley. The Supreme Judicial Court upheld summary judgment for the BHA on the question of duty because an attack by a fellow employee was not foreseeable in the absence of record evidence of “threats by employees, or a pattern of incidents involving employees, that reasonably would put the BHA on notice that Foley could be the target of an attack by an employee” or by Ferris in particular. Id. at 645, 646.
While the relationships between the parties here differ from Foley there is a similar absence of relevant threats or pattern of incidents. The landlord had no notice of facts showing that JF presented a threat to the relevant class of potential victims: tenants generally or Mr. Anderson in particular. This is not a case where the defendants failed to undertake any inquiry at all, as Perkins already knew JF and did check JF’s references and work history. The type of personal dispute between otherwise friendly cotenants that escalated and led to Mr. Anderson’s death—one and one-half years after JF’s lease commenced—was not a reasonably foreseeable risk of renting to JF without a background check. It follows that the plaintiff cannot establish the requisite duty owed to her and Mr. Anderson. See Whittaker, 418 Mass. at 198-201.
To be sure, the plaintiff cites criminal activity in the area surrounding the building, as well as an incident involving a different tenant discharging a gun in his apartment and causing a death. But “(p]rior criminal acts are simply one factor among others that establish the foreseeability of the act of the third party.” Mullins v. Pine Manor College, 389 Mass. 47, 56 (1983). The general foreseeability of criminal activity is not enough.
The possibility of criminal conduct occurring is present in almost every aspect of daily life. In that sense the possibility of a violent attack is always able to be foreseen. However, society should not place the burden of all harm caused by random violent criminal conduct on the owner of the property where the harmful act occurred, without proof that the landowner knew or had reason to know of a threat to the safety of persons lawfully on the premises against which the landowner could have taken reasonable preventive steps.
Whittaker, 418 Mass. at 200. This factor is particularly weak here, because the personal dispute and assault between otherwise friendly cotenants did not arise out of neighborhood activity. The only arguably “reasonable preventive steps” that might have prevented Mr. Anderson’s death would have been to deny JF an apartment based upon a criminal background check, even though Perkins already knew JF, who had given no indication that he was a danger to cotenants.
The plaintiff attempts to derive the alleged duty from the tenant screening regulations of the United States Department of Housing and Urban Development (HUD). 24 C.F.R. §982.307. Under the regulations, the property “owner is responsible for screening and selection of the family to occupy the owner’s unit.” 24 C.F.R. 982.307(a)(2). Those regulations also state that the owner “is responsible for screening of families on the basis of their tenancy histories” and that an “owner may consider a family’s background with respect to such factors as . . . (iv) Drug-related criminal activity or other criminal activity that is a threat to the health, safety or property of others ...” 24 C.F.R. §982.307(a)(3). The word “may” makes the criminal background check permissive, not mandatory. Roth v. Syracuse Hous. Auth., 270 A.D.2d 909, 909 (N.Y.App.Div. 2000). See generally Provencal v. Commonwealth Health Ins. Connector Auth., 456 Mass. *122 506, 513-14 (2010), and cases cited. Mr. Connors’ testimony that background checks are required cannot alter this legal conclusion. The HUD regulations do not affect the scope of the landlord’s common-law duty to take reasonable steps to prevent risks of foreseeable harm.
The fact that the landlord hired JF to do grounds work at the property does not add to its duty here. The incident did not occur while JF was on duty; JF was present because he was a tenant and acquaintance of Mr. Anderson from whom he had borrowed a car. He had no pass key or, indeed, any more keys than any other tenant would have had. The nature of his employment gave him no access to tenants’ rooms and his duties were limited to common areas. See Or, 62 Mass.App.Ct. at 488 (“How far criminal history or other past misbehavior should serve to disqualify a person may turn on the character of a particular intended employment”). “There was no occasion for particular worry about [the perpetrator’s] fitness as long as [the landlord] used him for handyman jobs that involved little if any contact with other people.” Id. at 482.
Finally, “[t]here must be limits to the scope or definition of reasonable foreseeability based on considerations of policy and pragmatic judgment.” Griffiths, 425 Mass. at 35-36, quoting Poskus, 423 Mass. at 640. A landlord cannot reasonably be expected to control the interpersonal relationships of tenants or to predict from a criminal record whether one friend poses a threat to another friend, both of whom live in the same apartment building. To impose liability here would induce landlords to decline housing to those with a criminal record in the absence of evidence of an actual threat to coten-ants or individual tenants. That would only export the “problem” somewhere else. The resulting unstable living conditions or homelessness may increase the chances of recidivism to the detriment of public safety and certainly would contravene the purpose of affordable housing programs such as the Section 8 housing program involved here. See generally Giggers, 277 S.W.3d at 370-71. The plaintiffs claim that landlords must consider dismissed charges raises serious questions regarding the presumption of innocence. The privacy of prospective tenants in the application process is also a consideration, as is the intent of the criminal offender records information statute to allow “a defendant’s access to employment, housing, and social contacts necessary to . . . rehabilitation.” Globe Newspaper Company v. District Attorney for the Middle District, 439 Mass. 374, 384 (2003). See 803 C.M.R. 5.03 (limiting criminal history background check of protective tenants by public housing authorities to convictions and pending charges). These practicalities weigh heavily against finding a duty without actual evidence of a threat to tenants. .
Based upon the principles articulated in Whittaker, Foley, Fund, Or and the other cases cited above, the Court grants the defendants’ motion for summary judgment, rather than allow the expenditure of time and resources on a trial that could have only one tenable result.
ORDER
For the above reasons, the defendants’ Motion for Summary Judgment is ALLOWED. Judgment shall enter for the defendants dismissing the complaint.

 Because the facts in this case concern charges that are no longer pending, the Court uses initials to protect non-public criminal offender information in the event that this decision is disseminated beyond the parties. See G.L.c. 6, §§168, 173 and 175; 803 C.M.R. 5:00.

The complaint has three counts: Count I for negligence, Count II for wrongful death and Count III for punitive damages under G.L.c. 229, §2. All three counts raise the same issue of duty and therefore will be discussed together.

Despite this reluctance, Foley upheld entry of summary judgment.

Nor do the other cases addressing liability of a landowner for the criminal acts of a third party confront the issues in this case. See Griffiths v. Campbell, 425 Mass. 31, 35-36 (1997) (murder of police officer by a tenant during a narcotics arrest was not reasonably foreseeable by a landlord despite the latter’s suspicions of drug activity); Poskus v. Lombardo's of Randolph, Inc., 423 Mass. 637, 634-40 (1996) (valet service left keys in ignition); Fund v. Hotel Lenox of Boston, Inc., 418 Mass. 191, 192 (1994) (hotel’s security for its guests); Flood v. Southland Corp., 416 Mass. 62, 72-73 (1993) (convenience store’s security for its customers); Sharpe v. Peter Pan Bus Lines, Inc., 401 Mass. 788, 791-92 (1988) (common carrier and its passengers); Mullins v. Pine Manor College, 389 Mass. 47, 54-55 (1983) (liability of a college to its students for a criminal act that was foreseen).

Nor does it involve the landlord’s alleged failure to lock a vacant apartment. See, e.g., Gibbs v. Diamond, 256 A.D.2d 266, 267 682 N.Y.S.2d 181, 183 (N.Y.App.Div. 1998) (finding duty).

See Giggers v. Memphis Hous. Auth., 277 S.W.3d 359, 367, 371 (Tenn. 2009) (city housing authority owed a duty of care to protect tenants from another tenant who had previously inflicted a pocket knife wound upon another tenant after a verbal exchange); Estate of Hough v. Estate of Hough 205 W.Va. 537, 540, 519 S.E.2d 640, 643 (1999) (landlord rented a mobile home to a husband directly across the street from the wife’s mobile home despite a family violence protective order of which the landlord should have known and then ordered her to mow the lawn in front of her trailer, which she was doing when her husband shot and killed her); Molosz v. Hohertz, 957 P.2d 1049, 1051 (Col.App. 1998) (finding that the landlord had no duty to neighbors in a case alleging the negligent retention of a violent tenant who fired several shots through the neighbor’s windows).