Toomey, J.
INTRODUCTION
On January 26, 1995, the plaintiff, Steven Rossacci, brought suit alleging negligence against the defendants, Stop & Shop Companies, Inc. (Stop & Shop), Madlyn A. Fafard and Richard E. Terrill, as Trustees of Quarry Street Realty Trust (Trust), and Sheehan Associates, Inc. (Sheehan). Stop & Shop filed cross-claims against the Trust and Sheehan for contribution and indemnification. Sheehan filed cross-claims against the Trust and Stop & Shop for contribution and indemnification.
Plaintiff was an employee of Stop & Shop. The Trust was the landlord-owner of the premises which included the parking lot where plaintiff was injured and the building in which Stop & Shop was the tenant. Sheehan was the security company employed by Stop & Shop.
On April 11, 1997, this matter came before the Court on the motions for summary judgment of Stop & Shop, Sheehan, and the Trust. For the reasons discussed below, Stop & Shop’s motion for summary judgment is ALLOWED, in part, and DENIED, in part, Sheehan’s motion for summary judgment is DENIED and the Trust’s motion for summary judgment is ALLOWED.
BACKGROUND
The undisputed facts in the summary judgment record establish the following. On October 14, 1992, at approximately 11:30 p.m., the plaintiff completed his work shift at Stop & Shop. Plaintiff exited the Stop & Shop store and walked to his car which was parked in the parking lot available to all employees and patrons of the commercial complex owned by the Trust. The car was located in an area designated by the Stop & Shop for employee parking. While walking to his car, the plaintiff was attacked by two assailants. He was initially struck from the rear by a motor vehicle operated by one of the assailants. The plaintiff was thrown onto the hood of the car and rolled onto the pavement. As the plaintiff was lying on his stomach on the pavement, the assailant drove the motor vehicle over the plaintiff and dragged him several feet. The motor vehicle then backed up towards the plaintiff who, as the vehicle neared, raised his legs and pushed himself away from the motor vehicle. The contact caused him to be thrown to the side of the motor vehicle. The plaintiff then rose and staggered towards the Stop & Shop store entrance.
The plaintiff made his way to approximately fifteen feet from the entrance to the Strawberries music store, which is next to the Stop & Shop, but he was attacked again by one of the occupants of the motor vehicle who struck the plaintiff several times in the back -with a screwdriver. When the assailant was distracted, the plaintiff stumbled into the Stop & Shop store. Paramedics came to the store and gave the plaintiff medical treatment. The plaintiff was thereafter taken to Milford Whitinsville Regional Hospital and subsequently transported by the Life Flight helicopter to the University of Massachusetts Medical Center.
The plaintiff alleges that he suffered injuries because the Trust, the owners of the premises where the incident occurred, Stop & Shop, the tenants of the property owned by the Trust, and Sheehan, the company allegedly responsible for providing security services to Stop & Shop, breached their separate duties to protect the plaintiff from foreseeable criminal acts by third parties. The defendants dispute that they owed a duty to plaintiff and all seek summary judgment upon plaintiffs complaint.
DISCUSSION
Summary judgment is to be granted when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue and of establishing “that the summary judgment record entitles the moving party to judgment as a matter of law.” Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). A party moving for summary judgment who does not bear the burden of proof at trial must demonstrate the absence of a triable issue either by submitting affirmative evidence negating an essential element of the nonmoving party’s case or by showing that the non-moving party is unlikely to submit proof of that element at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). The nonmoving party then must respond by articulating specific facts which establish the existence of a genuine issue of material fact. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989).
I. Claims Against the Trust
The Trust is the owner of both the building in which Stop & Shop is located and the parking lot where the plaintiff was struck, run over by a motor vehicle and attacked by one of the vehicle’s passengers. The plaintiff alleges that the Trust, as owner of the premises, failed to satisfy its duty to protect the plaintiff from foreseeable criminal activity. The plaintiff also maintains that the Trust’s failure was the proximate cause of the plaintiffs injuries.
The determinative nature of foreseeability is clearly stated in Massachusetts law: “A landlord, commercial or residential, is not a guarantor of the safety of persons in a building’s common area. A landlord is not free, however, to ignore reasonably foreseeable risks of harm to tenants, and others lawfully on the premises, that could result from unlawful intrusions into common areas of the leased premises.” Whittaker v. Saraceno, 418 Mass. 196, 197 (1994). Accordingly, the *9 principal issue before this Court, on the Trust’s motion for summary judgment, is whether the attack on the plaintiff was, as a matter of common law, reasonably foreseeable.[2]
Foreseeability plays a large role “[i]n limiting the extent of liability . . . Notions about what should be foreseen, in other words, are very much interwoven with our feelings about fair and just limits to legal responsibility.” Id. at 198, quoting 4 F. Harper, F. James, Jr., & O. Gray, Torts §20.5, at 136-37 (2d ed. 1986). The term “foreseeable” “(h]as been used to define both the limits of a duty of care and the limits of proximate cause.” Id. Therefore, when a court decides the foreseeability issue, it is not, as a practical matter, important whether the Court defines a duly “[a]s limited to guarding against reasonably foreseeable risks of harm” or whether the Court defines the “[njecessary causal connection between a breach of duty and some harm as one in which the harm was a reasonably foreseeable consequence of the breach of a duty.” Id. at 199. In short, it matters little whether the Court employs a “risk of harm” or a “coh'sequence of harm” formulation because “foreseeability” is the ultimate litmus.[3]
In deciding whether there was reasonable foreseeability of harm, all circumstances are to be examined by the Court, Flood v. Southland Corp., 416 Mass. 62, 72 (1993) (citations omitted), but a circumstance upon which courts often focus is the previous occurrence, vel non, of similar criminal acts on or near the premises. Whittaker, 418 Mass. at 199. At bar, the summary judgment record is devoid of evidence of previous parking lot assaults (and certainly none of which the Trust was aware) sufficient to demonstrate the reasonable foreseeability of harm. Although the plaintiff does reference three incidents of assault which occurred in the parking lot prior to the date of his attack, two of the incidents are based on hearsay[4] and evidence of those assaults would not be admissible at trial. Symmons v. O’Keefe, 419 Mass. 288, 295 (1995); McKenzie v. Brigham & Women’s Hosp., 405 Mass. 432, 437-38 (1989). And, there is no suggestion in the record that the Trust was aware of the third assault, the only incident as to which nonhearsay evidence could be adduced at trial.[5] Finally, nothing in the summary judgment materials would warrant an inference that the environs constituted a high-crime area requiring security.[6]
In deciding that a landowner had no duty to the plaintiff to provide protection from an act of violence against the plaintiff that was not reasonably foreseeable, the Supreme Judicial Court has observed that:
The possibility of criminal conduct occurring is present in almost every aspect of daily life. In that sense the possibility of a violent attack is always able to be foreseen. However, society should not place the burden of all harm caused by random violent criminal conduct on the owner of the property where the harmful act occurred, without proof that the landowner knew or had reason to know of a threat to the safety of persons lawfully on the premises against which the landowner could have taken reasonable preventive steps.
Whittaker, 418 Mass. at 200. Because this Court finds that the summary judgment materials do not suggest that the “threat to the safety of persons lawfully on the premises,” id., was reasonably foreseeable by the Trust, there is no genuine issue of material fact as to duty, an essential element of plaintiffs negligence case. Accordingly, summary judgment for the Trust is appropriate.
II. Claims Against Sheehan
The plaintiff alleges that Sheehan, a company retained by Stop & Shop to provide security services for Stop & Shop, failed to exercise reasonable care to protect him from the assault and battery that occurred in the parking lot. Therefore, the plaintiff maintains, Sheehan breached its duty to him and was the proximate cause of his injuries. Sheehan responds that the record demonstrates that Sheehan had no duty to protect the plaintiff from the assault in the parking lot because Stop & Shop did not retain or instruct Sheehan to provide security services in the plaza parking lot. The summary judgment materials do, however, present a genuine issue of material fact as to whether Sheehan was hired to provide security in the parking lot and thus had a duty of care vis-a-vis plaintiffs safety.
In support of its motion for summary judgment, Sheehan has drawn the Court’s attention to Stop & Shop’s answers to the plaintiffs interrogatories, in which Stop & Shop maintains that it neither provides security in the surrounding parking lot because Stop & Shop is not in the possession, custody or control of that area nor does it lease that area. Stop & Shop’s answers to the plaintiffs interrogatories further state that, because Stop & Shop did not own or lease the parking lot, Sheehan had no responsibility with respect to security in the parking lot at the time of the alleged incident.
In contrast to Stop & Shop’s answers to interrogatories, the deposition of Kevin W. Sheehan, the President of Sheehan Associates, Inc., recites that Sheehan would have been responsible for providing security for either Stop & Shop employees or any other individual in the parking lot on the night of the incident or during that time period. Thus, a genuine factual conflict, material to the disposition of the negligence claim, is demonstrated. Accordingly, Sheehan’s motion for summary judgment is denied.
III. Claims Against Stop & Shop
In support of its motion for summary judgment, Stop & Shop argues that it had no duty to protect the plaintiff from the assault and batteiy that occurred in the parking lot because: (1) it did not own, lease, *10 possess or control the parking lot, and (2) the attack was not foreseeable. In opposition, the plaintiff contends, in part, that, because Sheehan, an agent of Stop & Shop, has acknowledged some responsibility to provide security in the parking lot, see Section II, supra, an issue exists as to Stop & Shop’s responsibility as Sheehan’s principal. The Court sees merit in the plaintiffs contention that a genuine issue of material fact exists at least as to whether liability should be imposed on Stop & Shop for the alleged negligence of Sheehan.
In Massachusetts, “[a]n employer may be held vicariously liable for the intentional tort of an agent if the tortious act or acts were committed within the scope of the employment." Worcester Ins. Co. v. Fells Acres Day School, Inc., 408 Mass. 393, 404 (1990). “[C]onduct of an agent is within the scope of employment if it is of the kind he is employed to perform .. .; and if it is motivated, at least in part, by a purpose to serve the employer ...” Id. quoting Wang Laboratories, Inc. v. Business Incentives, Inc., 398 Mass. 854, 859 (1986).
The summary judgment materials at bar present a genuine issue as to whether Sheehan’s “failure” to provide security in the parking lot on the night of the alleged incident was conduct within the scope of its employment with Stop & Shop. As previously discussed, although Stop & Shop avers that it did not hire Sheehan for security in the parking lot, Sheehan maintains that Stop & Shop did hire it, in part, to provide security in the parking lot. Based on the disputed facts involving Sheehan’s security responsibilities, the issue of respondeat superior liability for Stop & Shop cannot be resolved on the motion for summary judgment.[7]
ORDER
For the foregoing reasons, it is hereby ORDERED that the motion for summary judgment of Madlyn A. Fafard and Richard E. Terrill, as Trustees of Quarry Street Realty Trust, is ALLOWED, the motion for summary judgment of Sheehan Associates, Inc. is DENIED, and the motion for summary judgment of the Stop & Shop Companies, Inc. is ALLOWED, insofar as the complaint alleges that Stop & Shop Companies, Inc. is principally liable and is DENIED, insofar as the complaint alleges that Stop & Shop Companies, Inc. is vicariously liable.

 The lease between the Trust and Stop & Shop does not appear to create any duty of care different from that which the common law would place on the Trust qua landlord. See, e.g., Whittaker, 418 Mass. at 198. The pertinent portion of the lease does not make any reference to security. Rather, the only arguably relevant provision of the lease is Section 8.4, Maintenance, which reads, in part:
Landlord shall keep all of the Common Facilities well lit during Tenant’s evening and nighttime business hours and for at least one-half hour thereafter. Landlord shall, at Tenant's request, provide personnel in such numbers as may be reasonably necessary to maintain the safe and free flow of traffic into, out of and within the Shopping Center, and Tenant shall pay its equitable share of the cost of providing such personnel.
The Court notes, parenthetically, that there are several sections of the lease, including the above quoted section, which have black lines drawn through the language. At first, the Court assumed that the language that was blacked out was excluded from the lease. However, because it appears that language relied upon by the plaintiff is also blacked out and there is no opposition from defendants to the plaintiffs reference to the language, it seems more plausible that the plaintiff intended to “highlight" the material, but, in the reproduction process, which produced the court’s copy of the pertinent provision of the lease, the emphasis device darkened and inadvertently appeared to constitute a deletion. This conclusion is compelling in view of the absence of the usual initials by which contracting parties designate deletions. Therefore, the court will treat the lined-through language as in effect.
The plaintiff argues that Section 8.4 of the lease created a duty upon the Trust to protect the plaintiff and others from being injured by automobiles while walking or driving in the parking lot. The Court finds, however, that the section provides only that, if the Trust incurred costs for external personnel to maintain traffic safety, the tenant would have to pay its proportionate share of the costs. See Whittaker, 418 Mass. at 198 n.2. The lease does not, therefore, address the matter of the landlord’s duty to provide security in the first instance.

 The Supreme Judicial Court has noted that the analytic approach it chooses to use depends on the way the issue was preserved below or argued to the Court on appeal. Id. at 199 n.3, citing a comparison between “Flood v. Southland Corp., 416 Mass. 62, 72-73 (1993) (defendant's argument that it owed no duty to plaintiff failed where evidence showed that criminal act came within reasonably foreseeable risk of harm); Foley v. Boston Hous. Auth., 407 Mass. 640, 644-45 (1990) (lack of foreseeability of attack established lack of duty) . . . and Sharpe v. Peter Pan Bus Lines, Inc., 401 Mass. 788, 793 (1988) (that stabbing was within reasonably foreseeable risks created by defendants’ breaches of duty went toward causation question); Carey v. New Yorker of Worcester, Inc., 355 Mass. 450, 454 (1969) (foreseeability of harm established element of proximate cause) . . .” Id.

 One of the incidents of assault, occurring in the parking lot, allegedly involved two employees of Stop & Shop. The plaintiff, who was not working on the night of this incident, states that he heard about the assault from other employees, who were not involved in the assault. These employees told the plaintiff that, while one of the female check-out grocery baggers was in the parking lot collecting grocery carriages, she was harassed by a “couple of kids.” Mark Kaplan, an employee at Stop & Shop, intervened and was assaulted in the process. There is no evidence that anyone at Stop & Shop or the Trust was notified of this incident.
A second incident involves Steven Guiliani, another employee of Stop & Shop, who was collecting grocery carriages in the parking lot. He was allegedly assaulted by a few individuals. Apparently, Guiliani knew one of the individuals. The source of the plaintiffs information regarding this information was not Guiliani, but rather fellow employees who were talking about the incident at work sometime after the assault occurred. The plaintiff states that Guiliani did report this assault to someone at Stop & Shop.

 The third incident is described in the deposition of Barbara A. Morgan, a customer of the Stop & Shop who witnessed four boys, between the ages of fourteen to eighteen, beating another boy in the parking lot as she walked from her car to the store. Morgan intervened and was able to stop the attack. As the fighting stopped, an employee came out of the store to *11 address the problem. Morgan states that she never reported the incident to the police or anyone at Stop & Shop.

 The plaintiff concedes that prior to October 14, 1992, the date of his assault, he was never concerned about being the victim of criminal activity while in the parking lot. He admits that he did not feel that the parking lot was a dangerous place, notwithstanding his awareness of the vehicular traffic in the parking lot.

 For the reasons stated in Section I, there is no genuine issue of material fact as to Stop & Shop’s liability as a principal tortfeasor. Accordingly, summary judgment shall enter for Stop & Shop on that theory of liability.